484 So.2d 807 (1986)
Virginia Wells, wife of/and Robert P. McLAURIN
v.
William H. HOLLEY.
No. 84 CA 1288.
Court of Appeal of Louisiana, First Circuit.
February 25, 1986.
*808 James J. Whittenburg, Slidell, for plaintiffs, appellants.
G. Brice Jones, Slidell, for defendant, appellee.
Before CARTER, SAVOIE and ALFORD, JJ.
CARTER, Judge.
This proceeding involves a dispute over a verbal construction contract.
On July 1, 1977, defendant, William Holley, a contractor, entered into an oral agreement with plaintiffs, Robert and Virginia McLaurin, to build a home on plaintiffs' property located in St. Tammany Parish. Although the contract price of $38,000.00 is not seriously contested, there is considerable conflict over the work which was to have been performed for that price.
Because they did not feel defendant had completed the house, plaintiffs did not pay the entire contract price. Defendant filed three liens against the property for the unpaid balance. As a result, plaintiffs filed a petition to cancel the liens. Included in the petition was a request for damages for breach of contract and unlawful filing of liens.
Defendant answered the suit and reconvened, seeking damages for breach of contract and an award based on quantum meruit for work done on the house in excess of the contract price as per plaintiffs' request.
At trial, Mr. McLaurin testified that defendant was to build the house for the contract price of $38,000.00 according to plans and specifications, which included the following:
1. Buy and install the carpet
2. Buy appliances for kitchen
3. Buy all light fixtures
4. Landscape yard
5. Provide any fill dirt beyond four truck loads.
McLaurin admitted that he and his wife had made certain changes in the house plans, but maintained these changes were made at little extra cost prior to work being actually performed. According to McLaurin, defendant agreed to finish the job within seventy working days, however, after seven months, McLaurin ordered defendant off the job before it was finished. Plaintiffs claim that it cost them approximately $6500.00 to complete the house.
*809 Defendant's version of the arrangement is quite different. He asserts that he originally bid the project for approximately $50,000.00. Since this was more than plaintiffs wanted to spend, defendant agreed to build the house for $38,000.00, provided he would not do finishing work on the upstairs or work on the garage (frame only), and plaintiffs would provide the following:
1. Carpet
2. Appliances
3. Light fixtures
4. Bathroom fixtures
5. Door lock
6. Cabinets
7. All other fixtures
Due to plaintiffs' failure to provide certain materials promised as well as plaintiffs adding extras to the job and making changes after certain work was already completed, defendant claims plaintiffs owe him $17,824.27.
After trial on the merits, the trial judge found that defendant had performed certain work beyond the original contract at plaintiff's request. A judgment was rendered against plaintiffs on the main demand, dismissing their suit,[1] and in favor of defendant for $16,630.00 on his reconventional demand. Plaintiffs appeal this judgment alleging seven specifications of error, as follows:
1. The trial court erred by awarding Mr. Holley the sum of $8,000.00 as additional compensation due under the terms of the contract;
2. The trial court erred by failing to offset the sums due Mr. Holley by the amounts paid to various suppliers who had filed liens;
3. The trial court erred by failing to offset the sums due to Mr. Holley by those amounts which the McLaurins were required to spend to complete the project according to the original plans and specifications;
4. The trial court erred by failing to offset the sums due Mr. Holley by the amounts necessary to complete those items called for under the original contract which were not completed by Mr. Holley;
5. The trial court erred by awarding Mr. Holley compensation for extras which were either not performed by him or were done so without the authorization of the McLaurins;
6. The trial court erred by awarding Mr. Holley judicial interest from date of judicial demand on that portion of the judgment representing compensation for extra work performed by him; and,
7. The trial court erred by awarding Mr. Holley compensation for extra work performed by him in excess of the amount by which the McLaurins were enriched by that extra work.

SPECIFICATIONS OF ERROR NOS. 1, 3 and 4
Plaintiffs maintain that the trial judge erred in awarding $8,000.00, the difference between what was actually paid to defendant and the original contract price. Since the parties stipulated that plaintiffs had paid defendant $30,000.00 for the job, and the contract price was determined by the trial judge to be $38,000.00, simple mathematics supports the $8,000.00 award. Plaintiffs reason, however, that the trial judge should have offset the award by the amount they expended to complete the construction when defendant failed to do so.
Implicit in the trial judge's determination is a factual finding that anything plaintiffs spent on the house after defendant left was in excess of the contract price for things which were not in the original plans and specifications. Also there is the factual finding that defendant did what was called for in the agreement for the construction of the house. Those findings of fact must be affirmed absent a finding *810 of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Although the house plans and specifications were introduced into evidence, conflict existed over the agreement as to who would provide certain materials and labor for certain phases of construction and how closely the plans and specifications were to be followed. The trial judge obviously believed that defendant had in fact complied with the agreement. After hearing the testimony and viewing all the evidence, which included bills for material and photographs of the house, the trial judge found that plaintiffs' expenditures to "complete" the house were beyond the scope of the original agreement. Upon our review of that testimony and evidence, we cannot say that his determination was manifestly erroneous.

SPECIFICATIONS OF ERROR NOS. 5 & 7
Plaintiffs argue that it was error for the trial judge to award defendant compensation for the extra work done on the house because such work was not authorized by them. In support of this contention, plaintiffs cite LSA-C.C. arts. 2763 and 2764.[2]
These Civil Code articles set forth certain presumptions which can be applied or rebutted by the evidence presented at trial. As a consequence, our review is limited to the question of whether the trial judge was manifestly erroneous in his factual determination. Arceneaux v. Domingue, supra.
In his reasons for judgment, the trial judge stated:
The Court finds that Holley constructed certain extras and that he is entitled to reimbursement for the extras, plus a reasonable profit. The extras consisted of the following:
1) Master bedroom-walls removed and changedcloset moved after it had been sheetrocked and set up
2) Garagethe original agreement, according to Holley was that it was to be studded and rough finished, no electrical hookups or other, however, according to Holley's testimony and admitted in McLaurin's testimony, the garage was sheetrocked and painted and then it was panelled, plumbing for an additional bathroom was studded in, hot water heater was moved, the garage door was trimmed, the crown mold was in the ceiling, the baseboards were on the wall and stairs were included, as well as electrical hook ups, the trim was all stained and finished and the attic was decked.
3) Utility Roomthe original agreement, according to Holley was that it was to be sheetrocked and finished, however, after Holley was called upon to raise the electrical outlets from 16", normal heights for plugs, to 36", it was then panelled and had to have new doors and jams.
4) Upstairs of houseoriginal agreement according to Holley was the upstairs and balcony were to be roughed in, just studded up. The upstairs was sheetrocked, the doors hung, the balcony was completely constructed, rails were put up and completely finished, painted and stained.
5) Windowsoriginally called for aluminum windows, were changed to bronze.
6) Appliancesconnected all of them
7) Painting of housethe house was stained, sealed and varnished, that is the woodwork. McLaurin, however, *811 was disappointed with the work or could not make up his mind and made Holley sand it and paint it white, except the den, two coats, one primer and one white latex enamel. The sheetrock in the house was painted with two coatsMcLaurin did not like the color and it had to be painted over again with an additional two coats.
8) Bay Windowroof had to be extended outward to cover an apparent specification defect.
It is obvious from the above that the trial judge determined that plaintiffs knew of the changes. It is unclear whether the trial judge found actual knowledge of the changes and applied the exception in LSA-C.C. art. 2763, or that he found these to be such great alterations that he applied the presumption of LSA-C.C. art. 2764, or that he applied a combination of both articles. We find this to be unimportant for purposes of our review. Upon our review of the testimony and evidence, we find no manifest error in the trial judge's factual determination which allowed compensation to the defendant for the items listed above. In those instances where we do not feel the change was so great as to mandate the use of LSA-C.C. art. 2763 as a matter of law, we find sufficient evidence to affirm the trial judge on the basis of LSA-C.C. art. 2764, namely actual knowledge on the part of plaintiffs.
Defendant's cost for the extras found by the trial court was determined to be $8630.00. This, added to the $8000.00 left owing on the original contract price, comprises the total amount of the award, i.e., $16,630.00. The $8,630.00 figure reflects a cost of $7505.00 for material and labor, plus a 15% profit of $1,125.00 to defendant. These amounts were derived from the testimony of defense witness Cliff Penick, an expert in cost estimation and construction. His testimony, summarized in an exhibit filed into evidence, itemized the extra work done by defendant as well as the cost of that work.[3]
*812 Although the total cost of the items listed in Penick's exhibit equals $8,630.00, the trial judge, in his reasons for judgment, did not award damages for all of the items in Penick's exhibit as being extra work done by defendant.
A study of the Penick exhibit demonstrates that the trial judge did not award damages for two of the items in the Penick exhibit (items 1 and 3). Using the same criterion for cost estimation as the trial court did (i.e., the testimony of Penick), we find the cost of the items listed as extra by the trial court in his written reasons for judgment, totals only $5,500.00. When we add a 15% profit of $825.00 to this figure, we arrive at a total of $6,325.00. The trial court's award of $8,630.00 for extras is, therefore, amended and reduced to $6,325.00.

SPECIFICATION OF ERROR NO. 2
Plaintiffs allege the trial judge erred by failing to offset the award to defendant by certain sums paid by plaintiffs to various companies which supplied material for the house prior to the time defendant left the jobsite. We find merit to this assignment of error.
It was stipulated before trial that plaintiffs paid three suppliers who had filed liens on plaintiffs' property for goods incorporated into the house. The liens which plaintiffs paid off totaled $3,624.65. Bills from these companies indicate the money due was for cabinets, plumbing work, plumbing supplies and bathroom fixtures. Although not set out specifically in his reasons for judgment, in context, it is obvious the trial judge found the lien items to have been included in the original $38,000.00 bid. He did, however, fail to give plaintiffs credit for the payment of these liens. We will, therefore, amend the judgment to reflect a credit of $3,624.65.

SPECIFICATION OF ERROR NO. 6
Plaintiffs contend that it was error for the trial judge to allow judicial interest on the judgment from date of judicial demand. Since part of the judgment is based on quantum meruit, they argue that interest should run on that portion only from the date of judgment. We agree.
It is well-settled jurisprudence in Louisiana that in a suit in quantum meruit, interest is only allowed from the date of the final judgment. Succession of Butler, 294 So.2d 512 (La.1974); Smith v. McMichael, 381 So.2d 898 (La.App. 2nd Cir.1980).
Therefore, interest on the unpaid portion of the contract, that is, $8,000.00 less a credit of $3,624.64, or a total of $4,375.35, will run from date of judicial demand. Interest on the remaining $6,325.00 of the judgment will run from date of final judgment.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to reduce plaintiff-in-reconvention's award as follows: (1) $4,375.35 representing the unpaid portion of the contract price after appropriate credits, with interest thereon to run from date of judicial demand until paid; (2) $6,325.00 representing the cost of extra work done by defendant on the house, with interest thereon to run from date the judgment becomes final. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal to be assessed equally against plaintiff and defendant.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Plaintiffs' request to cancel the liens filed by defendant was granted in a judgment rendered prior to trial.
[2] LSA-C.C. art. 2763 provides:

When an architect or other workman has undertaken the building of a house by the job, according to a plot agreed on between him and the owner of the ground, he can not claim an increase of the price agreed on, on the plea of the original plot having been changed and extended, unless he can prove that such changes have been made in compliance with the wishes of the owner.
LSA-C.C. art. 2764 provides:
An exception is made to the above provision, in a case where the alteration or increase is so great, that it can not be supposed to have been made without the knowledge of the owner, and also where the alteration or increase was necessary and has not been foreseen.
[3] The exhibit prepared by Penick provided as follows:

 A) EXTRAS
 460.00 1. CLEAR & FILL LOT (4 LDS) OWNER HAD
 TREES CUT BUT HOLLEY HAD TO REMOVE
 STUMPS & ADD ADDITIONAL FILL EST
 $300.00 MACHINE 160.00 FILL.
 250.00 2. MOVED WALL IN MASTER BR 6" TOWARDS
 BREAKFAST AREA HAD TO TEAR OUT SOME
 SHEETROCK (APPROX 14" LONG) LABOR
 100, ELECT. 25, SHEETROCK HANG &
 MATERIALS 100 CLEAN UP MISC. 25
1545.00 3. BATHROOM REARRANGED  ORIGINALLY
 BUILT W/O SHOWER  LATER ADDED
 MOVED WALLS CHANGED STEEL TUB TO
 CAST IRON AFTER IN PLACE. CARPENTRY
 150 SHEETROCK HANG & FINISH 100
 MATERIALS 75 TUB 260 SHOWER 700
 OTHER TUB 260
 490.00 4. ADDED DOUBLE CLOSETS IN MASTER BR -
 TWO BIFOLDS SHELVES RODS ETC. LABOR
 75, MATERIALS 20, DOORS 300, SHEETROCK
 HANG & FINISH 50, SHELVES & ROD 25
 PAINT 20
 875.00 5. GARAGE WAS ORIGINALLY BUILT
 UNFINISHED  LATER ROCKED WIRED ETC.
 PLUMB FOR HOT WATER HEATER. MOVED
 HOT WATER HEATER REQUIRED TEAR OUT
 S/R & MOVING PIPES LATER PANELLED
 ENTIRE GARAGE  BUILT STAIRS INTO
 ATTIC & PROVIDED SOME DECKING.
 SHEETROCK HANG & FINISH 150 BASE 75 +
 TRIM  CARP. LABOR 100, ELECT 100,
 PLUMB 250 STAIRS 125 DECKING $75
 325.00 6. UTILITY ROOM OUTLETS RAISED TO 36"
 AFTER ROCK. PANELLING ADDED-REPLACED
 TWO (illegible) DOORS WITH
 BASEBOARDS ETC. ELECT  25 PANELLING
 75 LABOR 75 TRIM 25 DOORS 125.
1660.00 7. UPSTAIRS WAS TO BE UNFINISHED. RIGHT
 BEFORE CLOSING OWNER WANTS TO WIRE
 ROCK HEAT PAINT ETC. FOR EXTRA
 BEDROOM. HOLLEY DOES THIS WORK &
 FINISHES BALCONY, STAIRS AND ADD
 DUCT FOR FUTURE AC ON DOWNSTAIRS
 PORCH. SR HANG & FINISH 350
 MATERIALS 75 ELECTRICAL 125 A/C 350
 PAINT 50 TRIM 50 DOOR 60 BALCONY TRIM
 + LABOR 150 STAIRS 450
 100.00 8. WINDOWS CHANGED FROM ALUMINUM
 FINISH TO BRONZE
 100 9. HOLLEY INSTALLED APPLIANCES  D/W,
 JENN AIRE W VENT, AND COOKTOP.
 LABOR 75 VENT 25
1700 10. ORIGINALLY STAINED  REPAINTED WITH
 WHITE  CHANGED AGAINS 2 EXTRA
 TIMES. $1700 50¢/FT
_______
7505 B) GENERAL IMPRESSION WELL CONSTRUCTED
____ HOUSE COMPLETELY FINISHED. NO
 NOTICEABLE DEFECTS IN FRAMING, ROOF,
 FINISH, PAINT, TRIM ETC.
 + 15%
______
1125
____
8630 C) CONSTRUCTION COSTS
____
 ASSUME $23 FT. 4½ YEARS AGO
 U/B AREA 2393 FT.
 COST = $ 55,000
 PROFIT 8,000
 _______
 TOTAL 63,000
 _______
 OWNER SUPPLIED & INSTALLED CARPET
 EST. 1500
 " SUPPLIED  LITE FIXTURES
 EST. 700
 " SUPPLIED  APPLIANCES EST. 1500
 _____
 $3700
 _____