499 So.2d 370 (1986)
Nita-Joan SAMS, d/b/a Nita-Joan Sams, Interiors
v.
KENDALL CONSTRUCTION CO., et al.
No. CA-3680.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1986.
Rehearings Denied January 15, 1987.
*371 Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, Robert E. Winn, New Orleans, La., for appellee.
John F. Whitney, Barham & Churchill, New Orleans, La., for defendant-appellant and third party defendant-appellant.
Harold E. Molaison, Gretna, La., for defendant-appellant and third-party defendant-appellant and third-party plaintiff-appellee, Kendall Const. Co., Inc.
Victor E. Stilwell, Jr., Priscilla M. Schwartz, New Orleans, La., for defendant-appellant and third-party defendant Labouisse, Graeber & Waggonner.
Eugene R. Preaus, David J. Krebs, New Orleans, La., for plaintiff-appellee Fidelity & Deposit Co. of Md.
Before BARRY, BYRNES, CIACCIO, LOBRANO and HUFFT, JJ.
BYRNES, Judge.
This appeal arises out of a dispute over the interpretation of certain clauses in a general contract and related sub-contract for improvements to the offices of Barham and Churchill, a New Orleans law firm. We affirm in part and reverse in part.

FACTS
In February 1982, appellant, Barham & Churchill, (Barham), entered into a contract with Kendall Construction Company, (Kendall), in which Kendall agreed to act as general contractor for the renovation of Barham's offices. The architectual firm of Labouisse, Graeber, Waggonner, (Labouisse), was retained by Barham to prepare drawings and specifications for the renovation and to administer the construction. Acting in its capacity as general contractor, Kendall entered into a sub-contract with appellee, Nita-Joan Sams, d/b/a Nita-Joan Sams Interiors, (Sams), for the furnishing and installation of carpet for the job. Because the carpet had not been chosen when this sub-contract was put out for *372 bid, a carpet allowance on which potential bidders could base their quotations was given in the specifications. When carpet was selected, the Contract Sum was to be amended by change order to reflect the actual cost of the carpet.
It is undisputed that the carpet ultimately chosen by Barham cost less than the allowance, thus entitling Barham to a credit. However, Sams disputed the amount of that credit and disagreed with the interpretation placed on the allowance provision by Barham, Kendall, and Labouisse. The disagreement between the parties concerned whether installation costs could be charged against the carpet allowance. Sams contended that Barham's credit, as figured by Labouisse, should be reduced by an amount equal to the cost of installing the carpet. The other parties contended that the allowance was only intended to cover purchase of the carpet, not installation.
When Kendall refused to alter Barham's credit to conform to Sams' interpretation, Sams sued Kendall for breach of contract. She also named Fidelity and Casualty Co. of Maryland, (Kendall's surety on the general contract), Labouisse, Barham and the 400 Lafayette Company (the owner of the building) as defendants. The suit against Barham was based on a theory of unjust enrichment, while the suit against Labouisse was based on allegations of professional negligence in connection with the drafting and interpretation of the carpet allowance provision. Kendall and its surety filed third party demands for indemnity against Barham, Labouisse and the 400 Lafayette Company. Barham and 400 Lafayette Company reciprocated with a third party demand against Kendall and its surety.
The case was tried before a Commissioner who recommended a judgment finding Kendall liable to Sams on the main demand, Barham liable to Kendall on its third party demand, and Labouisse liable to Sams and Kendall for attorney fees and lost interest. The district court adopted these recommendations and made them the judgment of the court. Barham, Labouisse and Kendall appealed.

KENDALL'S LIABILITY
Resolution of this dispute requires careful examination of the documents which govern the rights and liabilities of the parties. These include the general contract, sub-contract, general specifications and the various addenda to these documents. As to floor covering, the pertinent provisions are found in the general specifications and the addenda to those specifications. Specification 0968-1.10-D originally provided:
Carpet and pad furnished and installed out of a cash allowance of $22.00/yd. All carpet shall have a fire resistive flame spread rating of 0-75. (emphasis added)
However, that specification was altered by Clause 10 of Addendum 1 to the carpet specifications which provided that:
Carpet is to be furnished and installed (no pad-direct glue) with a net price for purchase of $26/yard. This supercedes specification Section 0968-1. 10-D (emphasis added)
Appellants contend that this provision excluded the cost of installation from the net purchase allowance of $26/yd. We cannot agree.
Both the original and amended specifications call for carpet to be "furnished and installed". Appellants argue that the phrase "net price for purchase" was intended to exclude installation costs from the allowance figure. They assert that this phrase is a term of art in the industry indicating cost of materials to the purchaser at the factory and does not include installation or other costs. While this may be true, the use of such a term of art is inconsistent with the remainder of the specification which calls for carpet to be "furnished and installed".
Other clauses of the specifications avoided this problem by being more specific. For example, Clause 11 of Addendum 1 clearly states that the contractor is to "Allow $7/Sq. Ft. for purchase only of marble *373 pavers ...". The clause also specifies that "Contractor is to figure installation as part of the job." Likewise, Clause 12 specifies an allowance of "$30/Sq. Ft. for purchase only of the marble countertop ...". In contrast, Clause 9 of Addendum 1 specifically directs the contractor to "Furnish and install vinyl and other wall covering with purchase only allowance ...". This provision illustrates that when the parties mention a "purchase only" allowance in the specifications, they did not necessarily intend to preclude the use of such an allowance to cover installation costs. In comparison to Clauses 9 and 11 (one of which clearly includes installation costs in a purchase only allowance and the other of which clearly excludes such costs), Clause 10 is ambiguous.
A contract should be viewed and interpreted as a whole, and all ambiguities construed against the party who prepared it. Fontenot v. Klumpp, 461 So.2d 579 (La. App. 3rd. Cir.1984), writ denied, 465 So.2d 738 (La.1985). In this case, the specifications and general contract were prepared by Labouisse and Barham. The sub-contract was prepared by Kendall and incorporated portions of the general contract and specifications by reference. Sams did not participate in the preparation of any of these documents. While appellants may have intended the phrase "net price for purchase" to exclude installation costs from the specified allowance, their duty as drafters of the agreement was to make that intention clear to Sams.
Viewing the various components of this agreement as a whole, we cannot say that this intent was expressed with sufficient clarity to be effective. We are reinforced in this conclusion by the fact that the intent to include or exclude installation costs in cash allowances was so clearly expressed elsewhere in the addenda.
Under these circumstances, Clause 10 of Addendum 1 should be interpreted to include installation costs as part of the $26/yd. allowance. We therefore affirm that portion of the trial court's judgment holding Kendall liable for the cost of installing the carpet.

BARHAM'S LIABILITY
The lower court also rendered judgment in favor of Kendall on its third party demand against Barham. On appeal, Barham argues that by executing a change order which excluded installation costs, Kendall lost its right to recover that expense from Barham. We agree and reverse the lower court's ruling on this issue.
This order changed the price provision of contract between the parties, and redefined Barham's financial obligation. There is no indication in the record that Kendall was unaware of the consequences of this change. If Kendall did not agree with the proposed change order it should not have signed it. By doing so it consented to a change in the amount due from Barham and indicated its agreement with Labouisse's interpretation of the allowance provision. This action in our opinion binds Kendall and is sufficient to relieve Barham from liability on Kendall's third party demand. The judgment of the trial court finding Barham liable to Kendall is therefore reversed.

LABOUISSE'S LIABILITY
Finally, we address the issue of Labouisse's liability. As project architect, Labouisse was responsible for the preparation of the specification which led to this litigation. The claims against Labouisse are based on allegations of negligence (professional malpractice) in the preparation and interpretation of those specifications.
In Maloney v. Oak Builder Inc., 224 So.2d 161, 168 (La.App. 4th Cir.1969), rev'd in part on other grounds, 235 So.2d 386 (La.1970) this court made the following observation concerning architectural malpractice.
Architects and engineers are held liable for damages incurred by the owner by whom they are employed when their plans and specifications are faulty and defective as a result of their neglect to exercise care and skill. However, in the *374 absence of an express contractual provision to the contrary, an architect's obligation does not imply or guarantee a perfect plan or a satisfactory result, and there is not assurance that miscalculations will not occur. Liability is considered to rest only on unskillfulness or negligence and not upon mere errors of judgment. Moreover, the ordinary care and reasonable skill by virtue of which engineers' or architects' preparations of plans and specifications is to be evaluated in determining whether they are guilty of negligence, must be that same care and skill required by others engaged in the same profession in the same locality. (emphasis added) (footnotes omitted)
To establish the standards of care and skill against which an architect's performance is judged, it is necessary to produce expert witnesses who can testify as to what those standards are Pittman Constructing Co. v. City of New Orleans, 178 So.2d 312 (La.App. 4th Cir.1965), application denied, 248 La. 434, 179 So.2d 274 (1965); Charles Carter and Co. v. City of Baton Rouge, 344 So.2d 431 (La.App. 1st. Cir.1977).
In this case, there was no expert testimony presented to establish the required standard of care for this locality, nor was there any expert testimony offered to establish that Labouisse's conduct fell below that standard. Under these circumstances we cannot determine if Labouisse breached its duty to Barham or any other party to the contract. Because of this failure of proof, we reverse the judgment against Labouisse.
For the foregoing reasons, the judgment of the trial court holding Kendall liable to Sam is affirmed. The remainder of the judgment is reversed. Costs of this appeal are to be paid by Kendall.
AFFIRMED IN PART AND REVERSED IN PART.
CIACCIO and HUFFT, JJ., concur.
CIACCIO, Judge, concurs.
As between Barham and Kendall I find the contract to be unambiguous in requiring Kendall to be responsible for the cost of installing the carpet as part of Kendall's general contractual obligations for which they were being paid the stated contract price. I also find the language to be clear insofar as Barham's carpet obligation was solely for the purchase price of the carpet. Kendall's consent to the change order did not amend the contract or lessen Barham's obligation but was an acknowledgement of the correct interpretation of the existing contract.
Barham had nothing to do with the letting of the sub-contract to Samsthat was Kendall's responsibility and prerogative. I conclude that Kendall solicited bids that included carpet installation costs (no one expected installation without charge) and that Sams' bid included installation costs. Any ambiguity in the agreement between Kendall and Sams must be charged against Kendall, the party responsible for the drafting of the agreement.
Although I concur in the majority's finding of no liability on the part of Labouisse, I would exonerate Labouisse because I find no ambiguity in the language of the contract Labouisse prepared, i.e., the contract between Barham and Kendall.
I respectfully concur.
PER CURIAM.
Our judgment in this matter is amended to cast Kendall's bonding company, Fidelity and Deposit Company of Maryland, liable in solido with Kendall Construction Company. In all other respects, rehearing is denied.