547 So.2d 1087 (1989)
James G. HOWELL
v.
Phyllis RHOADES.
No. 88 CA 0477.
Court of Appeal of Louisiana, First Circuit.
June 2, 1989.
Rehearing Denied August 17, 1989.
*1088 G. Steven Duplechain, Baton Rouge, for plaintiff-appellant, James G. Howell.
A.L. Jordan, Baton Rouge, for defendant-appellee, Phyllis Rhoades.
Before EDWARDS, SHORTESS, and SAVOIE, JJ.
SHORTESS, Judge.
In early 1984, Phyllis Rhoades (defendant) and her brother, Gary Cangelosi, a Baton Rouge developer, approached James G. Howell (plaintiff), an architect, with a proposal that Howell draw up plans for a condominium development on land owned jointly by defendant and her mother in Point Clear, Alabama. Plaintiff was at that time working on a project for Cangelosi, and Cangelosi believed that those plans could be modified slightly and used for the Point Clear development. Plaintiff and his associate, Richard Brown, flew to the site in Point Clear, met with Cangelosi and defendant, and agreed to do the work. During the course of the planning stage, Cangelosi had to withdraw because he was involved in other matters, including a political race. After the plans had been drawn up, defendant was unable to obtain financing for construction of the condominiums (known as Portofino). She refused to pay the bill plaintiff submitted, and he sued. She alleged as a defense that the oral contract entered into between the parties was subject to a suspensive condition that financing be obtained and, since that condition failed, no contract ever came into being.
At trial, defendant testified that plaintiff never made any statement throughout the course of their dealings that he expected to be paid when his work was performed. Plaintiff's testimony corroborates that. However, defendant stated that she had announced, after it became clear that Cangelosi would no longer be involved, that she was married to a minister, had no funds of her own, and that plaintiff's fee would be paid when financing was obtained for the project. Plaintiff remembered no such conversation, nor did Richard Brown, who was chief architect on the Portofino project. Plaintiff did remember that defendant subsequently told him he would be paid when the financing was obtained, and he testified that such an arrangement was common practice. However, he emphasized that he never believed that he would not be paid at all absent financing. Plaintiff never discussed with defendant a deadline for payment because he assumed she knew it was due after completion of the work. Plaintiff gave defendant his statement dated June 18, 1984, in response to her request for a final itemized bill to show to lending institutions as part of her applications to obtain financing. At that time the project had already been bid out and engineering site work was underway. The bill totaled $23,446.00. Final written demand was made on April 15, 1985, by certified mail, after defendant had refused payment.
*1089 The trial court dismissed plaintiff's suit after finding that the agreement between the parties was that payment for services would be made only upon securing funds for the project, and, since this suspensive condition never came into existence, the contract failed and no architectural fee was due. Plaintiff has appealed to this court.
Although defendant's statement that plaintiff's fee would be paid when financing was obtained for the project may have been intended to mean that the fee was contingent upon financing, she never actually used the word "contingent." From his testimony, plaintiff apparently believed that his fee would be paid out of any loan proceeds, but not contingent upon plaintiff's obtaining funds for the project. No written contract was ever drafted, and it is clear that although plaintiff discussed with defendant the manner in which his fee was to be calculated, he never explicitly stated that he expected to be paid when his work was done.[1] Under these facts, we believe there was no "meeting of the minds" between defendant and plaintiff. The contract was void for lack of consent. LSA-C.C. art. 1927; see Haas v. D'avanzo, 45 So.2d 104 (La.App.2d Cir.1950).
Plaintiff sued for full recovery of his fee of $23,446.00, and attorney fees and interest; in the alternative he sought a "quantum meruit" recovery. "Quantum meruit" has been employed in several contexts in Louisiana: first, a contractual quantum meruit, when a contract is implied from the circumstances, but no agreement as to price has been reached; or, in a quasi contractual setting, when the plaintiff has conferred a benefit on defendant in pursuance of a contract supposedly valid but in truth void. Comments, Quantum Meruit in Louisiana, 50 Tul.L.Rev. 631, 647 (1976); Nicholas, Unjustified Enrichment in Civil Law and Louisiana Law, 37 Tul. L.Rev. 49, 57 (1962). "Quantum meruit" protects restitution interests rather than reliance interests and here is limited to the amount that plaintiff actually lost by relying on an unenforceable contract, including reasonable profits. The measure of damages here, where the contract is void, is the benefit conferred on defendant, or her "unjust enrichment." Nicholas, supra, at 57.
Thus, this case differs sharply from the recent supreme court opinion of Morphy, Makofsky & Masson v. Canal Place 2000, 538 So.2d 569 (La.1989). In that case, the supreme court held that where no agreement as to price was reached between the parties, but all other elements of a contract were present, the measure of damages was, under what has been termed "quantum meruit," the reasonable value of plaintiff's services. The high court also said that actio de in rem verso was not appropriate because recovery was available under an actual implied contract. Here, there is no enforceable contract; a critical element, consent, is missing. Plaintiff was not, as in Morphy, concerned about how much he would be paid; the dispute, instead, was whether he would be paid at all.
Because, in this case, the contract is void, analysis may be made under actio de in rem verso principles. The requirement of subsidiarity, that no other remedy be available at law, is met because no contract exists under which recovery could be had. Morphy, 538 So.2d at 575. Analysis may likewise be made, however, under the quasi contractual quantum meruit mode because, unlike Morphy, no contract existed here at all.[2] Nicholas, supra, at 57. Here, because the measure of recovery would be the same under either theory, and because *1090 all limitations of the actio de in rem verso are met, the distinction is irrelevant.
Those limitations are usually defined as enrichment, impoverishment, connection between the enrichment and impoverishment, absence of justification or cause, and the "subsidiary" nature of the remedy. Comments, Actio De In Rem Verso in Louisiana: Minyard v. Curtis Products, Inc., 43 Tul.L.Rev. 263, 279, n. 86 (1969). Here, defendant was enriched to the extent of plaintiff's labor in transforming the original drawings for her brother's development into the appreciably different design for Portofino. The plans were completed and the project was actually let to bid. Although the project was never built, the site still is available for development and there is no reason why, economies permitting, Portofino may not be built in the future. Defendant's enrichment is paralleled by plaintiff's impoverishment; thus, the "double limitation" element, that the benefit to defendant not exceed the impoverishment to plaintiff, is met here. Plaintiff has clearly lost the man-hours it took to complete the plans, as well as his profit on the eight units for which plans were actually drawn. The connection between the two is likewise clear. As to absence of cause, in the "void contract" situation we have before us, the plaintiff's restitution interest is protected under quasi contractual quantum meruit because a benefit was conferred on defendant, and under actio de in rem verso because the benefit was conferred without cause: no juridical act existed. We have already discussed the "subsidiarity" requirement. Thus, all elements of the actio de in rem verso are met, even without resorting to the common-law theory of quantum meruit.
We find sufficient proof in the record of plaintiff's services to render an award. Brown testified about hourly rates and profit calculations and estimated from his records that 719.5 actual hours were spent on the project. This included major revisions of the original plans which plaintiff had drawn up for Cangelosi and which Cangelosi had believed could be modified slightly for Portofino. Dimensions changed as materials were changed; also, defendant asked for specific changes in at least the unit she hoped to occupy to suit her special needs. Whether those changes were to be duplicated for all eight units or were to be utilized in only one, nonetheless, plaintiff was forced to redraw the original plans extensively to accommodate such changes. The overhead salary for each employee was calculated at $8.25 per hour by dividing gross overhead costs by the number of man-hours worked. Each salary rate was then divided by man-hours, and that figure was added to the overhead salary to obtain at-cost billing figures. Plaintiff's time was billed at $22.45 per hour; Brown's at $21.50; and lower rates were billed for the two other employees. The profit or "re-use fee," was estimated at $500.00 per unit plan, or $4,000.00. Thus, defendant was billed for $23,446.00 total. Minus the profit margin, plaintiff's fee was $19,446.00.
Plaintiff is entitled to the profit he would have made had a valid contract existed. He testified that the profit was included in his fee regardless of whether the designs were ever transformed into constructed buildings. Therefore, plaintiff's recovery is the same as he billed per the contract, i.e., $23,446.00.
Plaintiff urges that interest be awarded from the date of judicial demand whether this judgment is rendered under a quasi contractual theory or not, if the amount awarded is the same. The rule is that, as the amount of the award is not liquidated until the judgment is rendered when recovery is limited to quasi contract, interest is only calculated from date of judgment. McLaurin v. Holley, 484 So.2d 807 (La.App. 1st Cir.1986). Whether the actual recovery is the same or not under quasi contract or under an actual contract is irrelevant. The mode of recovery precludes the recovery of interest from date of judicial demand.
Plaintiff likewise prays for attorney fees under LSA-R.S. 9:2781, or the "open account" statute. Awarding attorney fees would constitute recovery to plaintiff beyond his restitution interest. Defendant *1091 has not been enriched, and we deny recovery for plaintiff's attorney fees.
For the reasons stated, the decision of the trial court is reversed. Judgment is rendered in favor of James G. Howell and against Phyllis Rhoades for $23,446.00, with legal interest from date of this judgment until paid. Defendant is taxed for all costs.
REVERSED AND RENDERED.
NOTES
[1] The arrangement was that the fee was to be calculated as it was for the current Cangelosi project on which plaintiff was working, including a profit or "re-use" fee.
[2] The appellate cases criticized in Morphy, Swiftships, Inc. v. Burdin, 338 So.2d 1193 (La. App.3d Cir.1976), Houma Armature Works & Supply v. Landry, 417 So.2d 42 (La.App.1st Cir. 1982), and Custom Builders & Supply, Inc. v. Revels, 310 So.2d 862 (La.App.3d Cir. 1975), concern situations, like Morphy, where no agreement as to price for the contract was had. Those cases, as Morphy explains, are really contract cases and thus the actio de in rem verso limitation, that plaintiff's impoverishment not exceed defendant's enrichment, is not applicable because recovery could be had under an implied contract.