704 So.2d 433 (1997)
DUMAS AND ASSOCIATES, INC., Plaintiff-Appellee,
v.
LEWIS ENTERPRISES INC., Fred M. Bayles and Todd Kaplan, Defendants-Appellants.
No. 29900-CA.
Court of Appeal of Louisiana, Second Circuit.
December 22, 1997.
*435 Anthony J. Bruscato, Monroe, for Defendants-Appellants.
James A. Hobbs, West Monroe, for Plaintiff-Appellee.
Before BROWN, STEWART and PEATROSS, JJ.
STEWART, Judge.
Lewis Enterprises, Inc., Fred M. Bayles and Todd Kaplan, defendants, appeal the judgment of the trial court awarding $9,875.00 to Dumas and Associates, Inc., $5,875.00 for work performed pursuant to a contract and $4,000.00 based on quantum meruit or actio de in rem verso, and dismissing defendants' reconventional demand. Dumas answered the appeal and assigns as error the trial court's failure to award all sums sought in the main demand.

FACTS
Lewis Enterprises purchased a 17-acre tract in Ouchita Parish for development as a residential subdivision. Kaplan was responsible for determining the development potential of the property. The rolling hills of the land would accommodate one long street into the property and allow division into 24 lots. Kaplan discovered that no community sewage system was available but that individual sewage treatment plants for each lot could be used.
Kaplan engaged the professional engineering services of Dumas & Associates as project engineer. Dumas had previously submitted tracts of land for subdivision approval to the Ouachita Parish Police Jury. Kaplan advised Dumas that individual wastewater treatment plants were the chosen sewerage system with each purchaser bearing the cost of installing his own individual plant. An engagement letter obligated Dumas to provide professional services in the nature of preparation of plans and specifications for the project, including land surveying and engineering services necessary to subdivide the 17-acre tract, for a fee of $15,500.00. Because the developers had determined that sewerage service would be provided by individual treatment facilities, the scope of the work to be performed by Dumas did not include sewage treatment service.
Dumas submitted an application for preliminary subdivision approval to the Ouachita Parish Police Jury. Approval of that application was conditioned on approval of the sewage system by the Department of Health and Hospitals. By letter dated November 23, 1994, Steve McAdams, regional manager for the Department of Health and Hospitals, indicated, as per their recent telephone conversations, that individual sewage treatment plants would not be approved and summarized the conditions necessary for approval. However, prior to Dumas' receipt of the November 23, 1994 letter, Bayles, on behalf of Lewis, contracted with a construction company on November 21, 1994.
Later, Dumas advised Kaplan and Bayles that the Department questioned the proposed individual plants the first week of December, *436 1994. However, development of the subdivision was continued. Although no testimony established that he warned Lewis of the danger of beginning construction before a sewerage system was approved, Dumas did tell both Bayles and Kaplan that he believed that the proposed sewage system would be approved.
Numerous alternatives to the proposed individual plants were explored by Dumas. Upon the request of defendants, Dumas designed a community sewerage system but never prepared a written proposal for such services. However, a statement for services incurred due to the exploration of alternative sewage systems was submitted by Dumas.
A resolution of the objection to the subdivision application was reached by Kaplan, Bayles, and a representative of the Department without Dumas' participation. The sewage system ultimately approved, on June 9, 1995, was not one of the alternatives investigated by Dumas. However, Dumas incorporated this sewage system in the application for final approval of the subdivision which was submitted to the Ouachita Parish Police Jury on June 20, 1995.
Dumas filed a petition alleging a sum due pursuant to the original contract in the amount of $6,175.00 and an amount of $7,978.40 owed for engineering services related to the development of the subdivision sewage system. Defendants filed a reconventional demand asserting negligence and breach of contract by Dumas resulting in financial loss to Lewis. The trial court awarded Dumas $5,875.00 on the original contract and $4,000.00, based on quantum meruit, for services rendered developing the sewage system. Defendants' reconventional demand was dismissed.

DISCUSSION
An appellate court may not set aside a trial court's findings of fact in the absence of clear or manifest error. Lewis v. State, Through DOTD, 94-2730 (La.4/21/95), 654 So.2d 311; Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989); Thompson v. Coates, 29,333 (La. App. 2nd Cir. 5/7/97), 694 So.2d 599. To reverse a trial court's factual determinations, a court of appeal must find, based on the record, that no reasonable factual basis for the findings exists and that the findings are clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La.1987); Thompson v. Coates, supra. The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Lewis v. State, Through DOTD, supra; Stobart v. State, Through DOTD, supra; Lebeaux v. Newman Ford, 28,609 (La.App. 2nd Cir. 9/25/96), 680 So.2d 1291; Dismuke v. Quaynor, 25,482 (La.App. 2nd Cir. 4/5/94), 637 So.2d 555, writ denied, 94-1183 (La.7/1/94), 639 So.2d 1164.
The fact finder's choice between two conflicting permissible views of the evidence "cannot be" manifestly wrong. Stobart v. State, Through DOTD, supra. The duty of the fact finder is to evaluate the credibility when testimony is conflicting and to accept or reject any part of a witness' credibility. Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (La.5/22/95), 655 So.2d 309. Where the testimony conflicts, the fact finder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review by the appellate court. Rosell v. ESCO, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

Quantum Meruit
First, defendants assert that the trial court erred in awarding Dumas $4,000.00, based on a quantum meruit theory, for work performed drawing plans and specifications for a central collection type sewage system. Defendants argue that Baker v. Maclay Properties Co., 94-1529 (La.1/17/95), 648 So.2d 888, and Howell v. Rhoades, 547 So.2d 1087 (La. App. 1st Cir.1989), relied on by the trial court, indicate that the award was based on the civilian action of actio de in rem verso, or unjust enrichment, as quantum meruit is not recognized in civilian law. Further, defendants contend that the five elements of unjust enrichment, enumerated in Baker v. Maclay Properties Co., supra, were not proven at trial. Specifically, defendants assert that Dumas failed to show defendants' enrichment through Dumas' efforts, an impoverishment *437 by an itemized statement, and a cause for the enrichment or impoverishment.
Dumas answered the appeal and asserted that the trial court erred in failing to award all sums due for work performed pursuant to the original contract and for engineering services rendered for the design of the subdivision sewerage system.
Although we agree with the trial court's result regarding the award of compensation for Dumas' design of the sewerage system, the reasoning forming the basis for that ruling is flawed due to the trial court's failure to distinguish quantum meruit as employed in our jurisprudence. In written reasons for judgment, the trial court first defines quantum meruit as "a measure of compensation or a price unstated in a contract," citing Baker v. Maclay Properties Co., supra, and then states that quantum meruit is "measured as either amount that the plaintiff actually lost by relying on the unenforceable contract, including reasonable profits or the benefit conferred on the defendant (defendant's unjust enrichment)," citing Howell v. Rhoades, supra. The trial court found that "an award of the entire $7978 would be unjust" and awarded $4000 of the amount sought by Dumas, "a reasonable amount equal to the defendant's unjust enrichment."
Clearly, the trial court has confused the two situations wherein quantum meruit has been applied by Louisiana courts. Quantum meruit has existed in our jurisprudence since the early part of the 19th century. The term quantum meruit has been employed in several contexts, both as a civilian concept and as an import from the common law. Our jurisprudence has distinguished "a contractual quantum meruit, when a contract is implied from the circumstances, but no agreement as to price has been reached" from a "a quasi contractual quantum meruit, when the plaintiff has conferred a benefit on defendant in pursuance of a contract supposedly valid but in truth void." Howell v. Rhoades, 547 So.2d at 1089. See also Comments, Quantum Meruit in Louisiana, 50 Tul.L.Rev. 631 (1976); Comments, Actio De In Rem Verso in Louisiana: Minyard v. Curtis Products, Inc., 43 Tul. L.Rev. 263 (1969); Nicholas, Unjust Enrichment in Civil Law and Louisiana Law, 37 Tul.L.Rev. 49 (1962).
Confusion has arisen due to our courts' use of the term quantum meruit both in contract cases without stipulated compensation or price and in unjust enrichment cases. The civilian concept of quantum meruit is the measure of compensation or price unstated in a contract whereas the common law substantive claim of quantum meruit, similar to the civilian actio de in rem verso, is geared toward equity and unjust enrichment. Baker v. Maclay Properties Co., supra; Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So.2d 569 (La.1989). In the former, a contract exists, and the court merely supplies a price. In the later, no contract exists, and the court must supply a substantive basis for recovery.
When quantum meruit is used as descriptive term, "descriptive of the equitable principles of contract interpretation," plaintiff must show only the reasonable value of his services regardless of whether defendant's patrimony is commensurately enriched. Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So.2d at 574-575. Conversely, both quantum meruit as a substantive law basis of recovery and actio de in rem verso both require that plaintiff prove the degree of his impoverishment and the extent of defendant's enrichment, and neither theory applies where a contract exists. Baker v. Maclay Properties Co., supra; Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, supra; Howell v. Rhoades, supra. In Baker v. Maclay Properties Co., the court discussed "Baker's possible confusion of the common law and civil law meanings of quantum meruit" and determined that Baker had asserted a claim for unjust enrichment, or actio de in rem verso. 94-1529 at p. 18, 648 So.2d at 897. Recent cases indicate that Louisiana courts have attempted to alleviate the "confusion and inconsistency" in use of the term quantum meruit and that quantum meruit as a substantive basis of recovery is viewed with disfavor. Fogleman v. Cajun Bag & Supply Co., 93-1177 at pp. 4-5 (La. App. 3rd Cir. 6/15/94), 638 So.2d 706, 709. See also SMP Sales Management, Inc. v. *438 Fleet Credit Corp., 960 F.2d 557 (5th Cir. 1992).
Consequently, though defendants' assertion that quantum meruit as a substantive ground for recovery is not recognized as a civilian concept has merit, defendants' assertion that applicable law is unjust enrichment, or actio de in rem verso, is erroneous. Despite reference to "defendants' unjust enrichment," we believe that the trial court's findings that Dumas excluded design of a sewerage system from the original written proposal and that Lewis Enterprises, Inc., "requested that David Dumas prepare plans and specifications for constructing a central sewerage treatment facility" imply that a contract for the rendering of services existed and that the award was not based solely on a theory of unjust enrichment.
When one avails himself of the services of another in performance of a task, he is obligated to compensate that person. Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, supra; Doll v. Albert Weiblen Marble & Granite Co., 207 La. 769, 22 So.2d 59 (1945). A contract may be implied "from facts and circumstances showing a mutual intention to contract." Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So.2d at 573; V-8 Taxi Cab Service, Inc. v. Hayes, 322 So.2d 442 (La.App. 2nd Cir.1975). When a contract is implied from the circumstances (all other elements of a contract are present), but no agreement as to compensation has been reached, the missing term is supplied by the court, and the measure of damages, under what has been termed quantum meruit, is the reasonable value of claimant's services. Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, supra; Howell v. Rhoades, supra.
Defendants do not challenge work performed or fees paid pursuant to the July 9, 1994 letter which delineated the scope of services to be rendered by Dumas, including necessary land surveying and engineering services. Paragraph 4 of that letter specifies that sewage service "is to be provided by individual treatment facilities ... and is not included in the scope of this work." Further, paragraph 5 provides that Dumas will prepare the application for approval of the subdivision to be submitted to the Ouachita Parish Police Jury, water district and the health department and that he will assist in obtaining approval and attend meetings with review agencies.
The testimony of Dumas, Bayles, Kaplan and McAdams establishes that Dumas prepared documents necessary for submission to obtain subdivision approval, attended meetings with representatives of review agencies and assisted with obtaining approval for the subdivision development. Further, the invoices submitted to defendants by Dumas pursuant to the July 9, 1994 letter itemized the services rendered and their percentage of completion as of the date of each statement.
However, services Dumas rendered regarding a sewage system were excluded from the scope of the July 9, 1994 letter. Both Dumas and Bayles testified that they discussed Dumas' drawing plans and specifications for a central collection system. Bayles testified that he actually saw the plans designed by Dumas. Although both Dumas and Bayles testified that a fee was discussed, their testimony reveals that an agreement on the amount of compensation for these services was not reached. Dumas testified that his fee would be $10,000, roughly 10% of the total cost of construction of the sewerage system he was to design. Bayles testified that he believed 8% of construction costs would be an appropriate fee. The statement submitted by Dumas, dated April 4, 1995, indicated charges in the amount of $7,978.40, approximately 8% of the total estimated cost, due for engineering services performed drawing plans for construction of a sewerage system,
Clearly, the record establishes at the very least an implied contract. Dumas' supplying engineering services was the object, and both parties consented as indicated by Dumas' and Bayles' testimony. Ultimately, the sewerage system designed by Dumas was not used by defendants in development of the subdivision.
Therefore, quantum meruit as the term is used in civilian law, and not the common law quantum meruit concept which is equivalent to Louisiana's doctrine of unjust enrichment, *439 applies to determine the compensation due Dumas. We find that Dumas is entitled to the reasonable value of his services and that the trial court did not err in awarding Dumas $4000 for these services.

Reconventional Demand
Second, defendants assert that the trial court erred in dismissing defendants' reconventional demand. In the reconventional demand, defendants alleged that Dumas breached the contract between them and was negligent in perform of services rendered pursuant to that contract. Defendants allege that Dumas' negligence caused them to incur additional costs for clearing a right-of-way and for repairing damage to adjoining landowner's pond and to lose the use of one lot as a homesite due to Dumas' drainage system design.
Lewis contends that, due to the health department's rejection of the proposed individual sewerage systems, they had to spend an additional $88,000 and lose the use one lot to obtain approval and that Dumas breached his obligation to warn and advise his clients of the danger and possible additional cost of continuing the project prior to approval of the sewerage system.
Engineers are held liable for damages incurred by their employer when the engineer's plans and specifications are faulty and defective as a result of his neglect to exercise care and skill. However, in absence of an express contractual provision to the contrary, an engineer's obligation does not guarantee a perfect plan or a satisfactory result or warrant that miscalculations will not occur. A claimant must prove unskillfulness or negligence and not mere errors in judgment. Additionally, the standard of ordinary care and reasonable skill is that same care and skill required by others engaged in the same profession in the same locality. Sams v. Kendall Const. Co., 499 So.2d 370 (La.App. 4th Cir.1986); Maloney v. Oak Builders Inc., 224 So.2d 161 (La.App. 4th Cir.1969), reversed in part on other grounds, 256 La. 85, 235 So.2d 386 (1970). Expert witnesses must be produced to establish the standards of care and skill against which an engineer's performance is judged. Sams v. Kendall Const. Co., supra; Charles Carter and Co. v. City of Baton Rouge, 344 So.2d 431 (La.App. 1st Cir.1977); Pittman Construction Co. v. City of New Orleans, 178 So.2d 312 (La.App. 4th Cir.1965), application denied, 248 La. 434, 179 So.2d 274 (1965).
Dumas contracted with defendants to develop plans for a subdivision and to prepare the application for subdivision approval. The parameters of services to be rendered by Dumas was established by the July 9, 1994 letter. Specifically, paragraph 5 of that letter, provides:
Prepare documents required by the subdivision ordinance for submission to the Ouachita Parish Police Jury, water district and the health department for their review for preliminary and final subdivision approvals. Assist in obtaining these approvals and attend meetings with review agencies.
The scope of that contract also included design of a drainage system and specification of the right-of-ways. Defendants do not allege that Dumas failed to perform these services and contend only that Dumas breached his obligation to them as established in paragraph 5 and/or was negligent in the work he did perform.
A number of witnesses offered testimony regarding the services rendered by Dumas. Bendell Carr, an employee of Entergy of Louisiana, also known as LP & L, testified that the developers of the subdivision opted for underground utility lines, that the developers bear the cost of underground lines, and that LP & L locates utility lines on private right-of-ways not public right-of-ways.
William Holden, owner of Amethyst Construction, contracted to build subdivision roads, drainage and water lines. Mr. Holdman is a licensed civil engineer but has not worked in that field in approximately fifteen years. He testified that the drainage system designed by Dumas was not problematic and did function properly, and that he had no knowledge of any repairs to the pond. Mr. Holdman further testified that he submitted a bid on the sewerage system as designed by Dumas.
Don Harrison, a consulting engineer for the Parish of Ouchita, testified that the *440 drainage system designed by Dumas worked and that he was not aware of any problems with that system.
Mr. Holdman and Mr. Harrison, both of whom are engineers, testified that the drainage system was properly designed. Neither engineer testified regarding the standard of care for professional engineers.
In written reasons, the trial court addressed this issue:
The ultimate responsibility for obtaining approval from regulatory authorities ... lay with the developers ... and not their consulting engineer, David Dumas. Both Bayles and Kaplan had extensive experience in land development projects and knew or should have known that swift regulatory approval ... was not a forgone conclusion. (Emphasis added.)
We agree with the trial court that these developers were experienced and understood the hazards of proceeding without regulatory approval. Further, our review of the record convinces us that the trial court did not err in failing to find that Dumas was negligent and in denying defendants' reconventional demand. Although Bayles and Kaplan testified regarding the subdivision project and Dumas' alleged negligence, defendants' allegations were not supported by the testimony of any other witness. Further, no expert testimony was produced to establish the standard of care and whether plaintiff breached that standard. We do find that Dumas was not negligent in designing plans and specifications for the subdivision project and did not cause any additional expense to defendants. Therefore, we hold that the trial court did not err in this regard.

Dumas' Answer
The remaining issue raised on appeal is the trial court's failure to award all amounts due on the original contract, specifically $300.00 for re-staking lot corners which were displaced by defendants' contractor. A review of the record establishes that these services were rendered and that this amount was invoiced to defendants. Apparently, the trial court inadvertently omitted this amount when calculating the award pursuant to the original written proposal between Dumas and defendants. The amount awarded to Dumas under the original contract should have been $6,175. Therefore, we increase the amount of the award by $300.00.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court awarding Dumas $4000 for services rendered in designing a community sewerage system and denying defendants' reconventional demand. Further, we amend the judgment of the trial court to increase the award to $6,175 for services Dumas rendered pursuant to the original written contract. Costs of this appeal are assessed to defendants.
AFFIRMED, in part; AMENDED and RENDERED, in part.