638 So.2d 706 (1994)
Lyle O. FOGLEMAN, Sr., Plaintiff-Appellant,
v.
CAJUN BAG & SUPPLY COMPANY, Defendant-Appellee.
No. 93-1177.
Court of Appeal of Louisiana, Third Circuit.
June 15, 1994.
*707 Glennon P. Everett, Crowley, for Lyle O. Fogleman Sr.
Kenneth O'Neil Privat, Crowley, for Cajun Bag & Supply Co.
Before KNOLL, COOKS and WOODARD, JJ.
KNOLL, Judge.
In this suit, plaintiff, Lyle Fogleman, alleges that the defendant, Cajun Bag & Supply Co. (Cajun), failed to pay him $18,000 in commissions he earned from selling Cajun's products before leaving Cajun's employ. The trial court found that the commissions were not owing and dismissed the suit. Mr. Fogleman appeals, claiming the trial court erroneously failed to apply the doctrine of quantum meruit.

FACTS
Mr. Fogleman began working for Cajun in 1986. For the first 18 to 24 months, he was paid a salary plus his expenses. After this time period, Mr. Fogleman was paid on the basis of straight commissions (i.e., his only income was from commissions). To cover his expenses, Mr. Fogleman received a bi-monthly draw against his commissions.[1] In early 1992, Cajun conditioned Mr. Fogleman's continued employment on his signing an employment contract. Apparently, the contract contained a non-competition clause Mr. Fogleman found unacceptable. His employment with Cajun ended on January 17, 1992. At trial, the parties placed much emphasis on how and when commissions were earned. Mr. Jules Maraist, owner and manager of Cajun, testified that it was the policy of Cajun that commissions were earned only when the products were shipped and invoiced, not when the customer placed the order. This appeal concerns whether Mr. Fogleman may recover commissions for orders solicited by him before leaving Cajun on January 17, 1992, but not shipped and invoiced until after that date.
In finding Mr. Fogleman was not entitled to the commissions, the trial court concluded there was no contract governing the disposition of commissions in the event of a salesman's termination. While failing to frame its oral reasons within any explicit legal theory, the trial court noted two factors it believed weighed against Mr. Fogleman recovering. First, it found Mr. Fogleman, in the past, had received commissions for sales he did not solicit. Secondly, the trial court found Mr. Fogleman failed to perform certain duties required of salesmen employed by Cajun.
For reasons that follow, we reverse the judgment of the trial court and award Mr. Fogleman the $18,000 in commissions.

*708 THEORY OF RECOVERY
Fogleman asserts in his only assignment of error that "the trial court failed to apply the equitable principal [sic] of quantum meruit." Before we address the merits of plaintiff's claim, we think it appropriate to discuss the exact status of quantum meruit in Louisiana jurisprudence.
Quantum meruit has existed in our jurisprudence since the early part of the last century. See Quantum Meruit in Louisiana, 50 Tul.L.Rev. 631, citing Morgan v. Mitchell, 3 Mart. (n.s.) 576 (La.1825). However, this theory of common law origin has not been without its detractors. In Oil Purchasers, Inc. v. Kuehling, 334 So.2d 420 (La. 1976), the Supreme Court commented:
"Quantum meruit is a `striking example of an ill-considered importation from the common law ...' It supplied a need in early common law and has been expanded in our jurisprudence. However, its lack of underlying theoretical basis has `led inexorably to confusion and inconsistency'" Id. at 425 (Citations omitted).
Despite this criticism, the circuit courts continued to routinely apply quantum meruit to a large number of differing factual situations.
The Supreme Court most recently addressed the status of quantum meruit in Morphy, Makofsky & Masson v. Canal Place, 538 So.2d 569 (La.1989). Morphy involved a payment dispute between a sub-contractor and a "sub-sub-contractor". The trial court and the court of appeals found no contract existed, but made an award under "a theory of unjust enrichment or quantum meruit." The lower courts awarded the plaintiff only $45,000, finding the defendant was not enriched by the full $78,613 that the plaintiff was claiming as the fair value of its services. In overturning the lower courts' ruling, the Supreme Court found that a contract did exist, but a price had not been agreed upon. Since a contract did exist, the plaintiff should have been awarded the fair value of its services, $78,613, and not limited to the value by which the defendant was enriched, as a plaintiff would be if recovering under quantum meruit or unjust enrichment. The Court went on to distinguish two situations where Louisiana courts had applied quantum meruit. One situation is where a contract actually exists, and the court is simply supplying a price. The other is where no contract exists, and the court must supply a substantive basis for recovery.
"[T]he Civil Code articles on Obligations have long furnished the principles for interpreting contracts ambiguous only with regard to compensation or price for agreed upon services. Unfortunately for the purity of our civilian concepts, the cases in our jurisprudence which have applied these codal provisions have often referred to this reasonable value of services or equitable ascertainment of compensation or price as "quantum meruit" or an action in quantum meruit. Quantum meruit may well have been an ill-considered importation from the common law (see that criticism in Oil Purchasers v. Kuehling, 334 So.2d 420 (La. 1976)); however, no great harm follows from that importation if we understand that numerous cases in our jurisprudence have used "quantum meruit" as a descriptive term, descriptive of the equitable principles of contract interpretation enunciated in La.Civ.Code arts. 1903 and 1965 [now art. 2055], which were the substantive law bases for the decisions in these cases.
A problem has arisen in our jurisprudence only when the courts have moved from quantum meruit as simply a measure of compensation or price unstated in a contract, to quantum meruit, the common law substantive law claim geared to equity and unjust enrichment, something of a counterpart to the civilian actio de in rem verso." Id. at 574 (Citations and footnotes omitted).
In light of the above, we believe quantum meruit, as a substantive basis for recovery, is now viewed with disfavor by Louisiana law. This conclusion has also been reached by the United States Fifth Circuit. See SMP Sales Management, Inc. v. Fleet Credit Corp., 960 F.2d 557 (5th Cir.1992), wherein the court, citing Morphy, stated:
"Although both the district court and the parties relied on quantum meruit as a substantive basis of recovery, it is not recognized as such in Louisiana but is only used as a measure of compensation or *709 price in quasi-contract or when none is stated in a contract."
Therefore, where a plaintiff seeks to employ a quantum meruit theory as a substantive ground for recovery, we believe the analysis is more properly made under the doctrine of actio de in rem verso or unjust enrichment.[2] While the result reached under quantum meruit and unjust enrichment may often be the same, see Howell v. Rhoades, 547 So.2d 1087 (La.App. 1 Cir.1989), unjust enrichment is firmly rooted in our Civil Code and has well defined elements. As explained in Kirkpatrick v. Young, 456 So.2d 622 (La. 1984):
"In 1967 this court recognized that the moral maxim contained in La.C.C. art. 1965 [now art. 2055] "that no one ought to enrich himself at the expense of another" provides the basis for an action for unjust enrichment. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). We have also enumerated the five prerequisites necessary to support such an action: 1) there must be an enrichment, 2) there must be an impoverishment, 3) there must be a causal relationship between the enrichment and the impoverishment, 4) there must be an absence of justification or cause for the enrichment or impoverishment, and 5) there must be no other remedy at law." Id. at 624.
Furthermore, by adhering to the traditional civilian concept of unjust enrichment, we attempt to alleviate any "confusion and inconsistency", see Oil Purchasers, Inc., supra, that may arise from the use of quantum meruit.

UNJUST ENRICHMENT
Since a plaintiff may not recover under unjust enrichment unless he has no other legal recourse, we first address whether there exists no other remedy at law. This element generally reduces to whether there exists a contract under which the plaintiff may recover. See Morphy and Howell, supra.
It is undisputed that prior to Mr. Fogleman leaving Cajun's employ, the parties had not discussed what would become of commissions arising out of orders placed before the salesman left Cajun's employ, but not delivered until after he left. However, Mr. Fogleman testified that on the day he left Cajun, January 17, 1992, Mr. Maraist assured Mr. Fogleman that he would receive commissions for all orders credited to him as of January 17, 1992. Mr. Maraist disputes this. The trial court's oral reasons for judgment clearly state that it found there was no contract governing what would become of the disputed commissions upon termination of the employment relationship. Reviewing the record, we can find no clear error in this determination. Since there was no contract under which Mr. Fogleman could recover, the requirement that no other remedy at law exists is fulfilled.
Next, because the elements of impoverishment, enrichment, and the causal relationship between the two are so inter-related, we address these elements together. There was no dispute that Mr. Fogleman was not paid the commissions and that Cajun retained them, while benefiting from the sales underlying the commissions. Moreover, the direct and obvious connection between the two obviates the need for any discussion of the casual relationship between the enrichment and the impoverishment.
However, while the impoverishment and enrichment may be obvious, the amount properly recoverable cannot be so readily determined. The parties stipulated the amount of the commissions for orders credited to Mr. Fogleman's account before January 17, 1992, but not invoiced and shipped until after that date was $18,000. While Cajun stipulated that this would be the proper amount of recovery if the court found a contract between the parties, Cajun denied this would be the proper amount under a quasi-contractual theory of recovery.
*710 Louisiana jurisprudence, when formulating a substantive theory of recovery in the absence of a contract (regardless of the theory being denominated actio de in rem verso, unjust enrichment, or even "quantum meruit"), has consistently applied a two-fold limitation to the recovery. First, the plaintiff cannot recover more than the actual value of his services and materials, plus a fair profit; and secondly, the plaintiff cannot recover more than defendant was enriched by plaintiff's services. See Custom Builders & Supply, Inc. v. Revels, 310 So.2d 862 (La.App. 3 Cir.1975), citing Planiol, Chapter III, Section 93B (Unjust Enrichment). See also Swiftships, Inc. v. Burdin, 338 So.2d 1193 (La. App. 3 Cir.1976).[3]
Furthermore, we believe these limitations were implicitly approved in Morphy. In dictum, the Morphy court noted that if it had not found a contract between the sub-contractor and the sub-sub-contractor, then the sub-sub-contractor would not have recovered the full $78,613 it was claiming, since the sub-contractor was not enriched by this amount. The Morphy court reasoned that the sub-contractor had in-house personnel capable of performing the work the sub-subcontractor performed, but at a substantially lower price than the sub-sub-contractor charged. However, since the Morphy court did in fact find a contract between the parties, it was unnecessary to apply the limitation to the case before it.
Turning to the case sub judice, since we have found an impoverishment and the absence of a contract, we must consider these limitations in determining Mr. Fogleman's recovery. In determining the actual value of Mr. Fogleman's services, plus a fair profit, we note "[t]here is no specific test which must be applied to determine the reasonable value of such services. It is a matter of equity depending upon the circumstances of each case." Jones v. City of Lake Charles, 295 So.2d 914, 917 (La.App. 3 Cir.1974). The $18,000 figure is based on the commission rate that existed between Mr. Fogleman and Cajun as of January 17, 1992. The record indicates this was the arrangement between the parties for 3 to 4 years prior to Mr. Fogleman leaving Cajun. We believe the financial history of the parties would be the best measure of the reasonable value and fair profit to which Mr. Fogleman is entitled under the circumstances of this case. Therefore we find $18,000 to be the appropriate value of Mr. Fogleman's services.
In comparing the value of Mr. Fogleman's services to the amount by which the defendant was enriched, Cajun can clearly be distinguished from the contractor in Morphy. There is no evidence Cajun could have obtained the equivalent of Mr. Fogleman's services from a less expensive source. Indeed, the record indicates that other salesmen at Cajun were compensated in the same manner as Mr. Fogleman at that time. Additionally, it is the defendant's burden to prove the amount claimed by the plaintiff exceeds the amount by which the defendant is enriched. Swiftships, supra. Since Cajun has plainly not carried this burden, there is no limitation on Mr. Fogleman's right to recover $18,000.
Finally, we address whether there exists an absence of justification or cause for the enrichment. One instance where such an enrichment may be justified is where there is a valid juridical act between the impoverishee and the enrichee or between a third party and the enrichee. Edmonston v. A-Second Mortgage Co., 289 So.2d 116 (La.1974). For example, in SMP Sales Management, supra, an unsecured creditor claimed that a secured creditor was unjustly enriched, as the unsecured creditor apparently took some actions which helped preserve the collateral which the secured creditor ultimately foreclosed on and sold. The court, in denying the unsecured creditor's claim, noted that even if there were an enrichment, the security agreement itself was justification for such enrichment.
Additionally, courts have held that the actions of the enrichee may present justification for the enrichment. In Creely v. Leisure *711 Living, Inc., 437 So.2d 816 (La.1983), a real estate agent sued a home builder for the commission on a home sold by the builder. The court noted that while the agent had sold other houses for the builder, the buyer for the house in question was discovered by the builder. The court further commented:
"His enrichment [the builder's], if one chooses to call it that, was the result of his investment of skill, time, labor and financing and his good fortune in his finding a buyer ... [T]he profit that the builder enjoyed on the sale of his property after expending time, money, and energy to complete construction of the house is not a windfall, nor somehow undeserved. Rather it is a profit to which he is properly entitled." Id. at 822-823.
Therefore justification for the enrichment may also arise from a party's own efforts in securing the enrichment.
In the case sub judice, none of the parties have suggested the existence of a juridical act that would justify an enrichment of Cajun. However, Cajun argues in brief and the trial court found, that not paying Mr. Fogleman the commissions was justified. This justification was based on the assertion that salesmen for Cajun would sometimes receive commissions for orders originating from a salesman's territory, even if the salesman had not solicited the business of that particular customer. While there was general testimony to this effect, there was no evidence that any part of the commissions in dispute were earned in this manner. Nor was there evidence as to what amount, if any, Mr. Fogleman had received from this practice in the past. Absent a specific showing of how and to what degree Mr. Fogleman benefited from these "unearned" commissions, this evidence is not sufficient to justify Cajun withholding the commissions in dispute.
The trial court also found that salesmen might be obligated to perform certain collection or customer complaint duties after soliciting a sale. Since Mr. Fogleman could not perform these duties after leaving Cajun's employ, the trial court found this to be an additional justification for Cajun's refusal to pay the commissions.
The testimony as to what duties a salesman might have after soliciting a sale was unclear and contradictory. While Mr. Fogleman testified that he may have handled post-sale problems "a couple of times," Cajun's director of marketing services, Mark Arnold, testified that typically he [Arnold] handled these duties and not the salesmen. Additionally, it is difficult to understand how collection problems and customer complaints could effect a salesman's commissions. According to Mr. Maraist, Cajun's policy was to consider commissions earned when the order was shipped; thus the commission was owing to the salesman before any of these problems could arise. Finally, there is no evidence of record indicating that there were in fact any problems concerning the sales on the bags underlying the disputed commissions. Therefore we find no justification for the enrichment of Cajun by withholding the commissions in question. The trial court was clearly wrong in holding otherwise.

CONCLUSION
Finding that the plaintiff has proven all the elements of unjust enrichment, we reverse and set aside the judgment of the trial court. Judgment is hereby entered in favor of Lyle O. Fogleman in the amount of Eighteen Thousand and no/100 ($18,000.00) Dollars against Cajun Bag & Supply Company, with legal interest from date of judicial demand. Costs of trial and this appeal are assessed to the defendant, Cajun Bag & Supply Company.
REVERSED AND RENDERED.
NOTES
[1] The "draw" was an advance on Fogleman's expenses by Cajun. When his total earnings on commissions were computed at the end of the month, this draw was deducted from his earnings.
[2] "Actio de in rem verso" is a civil law action based on the general prohibition against unjust enrichment. However, the terms actio de in rem verso and unjust enrichment have been used interchangeably by many Louisiana courts. See Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967).
[3] We recognize that both Custom Builders and Swiftships were criticized in Morphy. However, this criticism was based on these cases applying quantum meruit to situations where a contract actually existed. We can find no fault with the legal principles cited therein when applied to cases where no contract exists.