692 So.2d 1167 (1997)
DIXIE MACHINE WELDING & METAL WORKS, INC.
v.
GULF STATES MARINE TECHNICAL BUREAU, INC.
No. 96-CA-869.
Court of Appeal of Louisiana, Fifth Circuit.
March 12, 1997.
Leonard L. Levenson, Zara Zeringue, New Orleans, for Defendant/Appellant.
Ronald J. Pursell, Harahan, for Plaintiff/Appellee.
Before GOTHARD, CANNELLA and DALEY, JJ.
*1168 GOTHARD, Judge.
Defendant, Gulf States Marine-Technical Bureau, Inc. (Gulf States), appeals a ruling of the trial court in favor of plaintiff, Dixie Machine Welding & Metal Works, Inc. (Dixie) in which Gulf States is cast in judgment for $1,408.00 together with legal interest from date of demand, and attorney fees in the amount of $800.00. For reasons that follow, we affirm the money judgment, but we reverse the judgment awarding attorney fees.
This matter began on May 5, 1992, when an employee of Gulf States went to Dixie and requested milling on a "goose neck" pin. After some discussion, the pin was left with Dixie for the work. An employee of Gulf States returned the next day, picked up the pin and gave Dixie a check for $1,760.00. Subsequently, Gulf States stopped payment on the check and Dixie filed this suit on open account to recover the $1,760.00. After a trial on the merits, the trial court found that an open account existed and rendered judgment in favor of Dixie in the amount of $1,408.00.
At trial the plaintiff offered testimony from Charles Roussell, who was the machine shop superintendent for Dixie. He testified that on May 5, 1992, Alberto Guevara an employee of Gulf States, brought in a boom step or goose neck pin from the boom of a ship for milling. Mr. Roussell filled out a work authorization form, a copy of which is contained in the record. However, the form is not signed by Gulf States. Mr. Roussell stated that the indication, "T & M" on the work authorization shows that the job was taken on a time and materials basis, not a flat rate. Because Mr. Guevara explained that he needed the pin by the following morning, Mr. Roussell consulted with his father, Carl Roussell, Sr. president of Dixie, who authorized overtime on the project. The witness further explained that Dixie employees had spent 24 hours of straight time and 17 hours of overtime on the project.
Mr. Guevara, who communicated several times with Dixie, picked up the pin the next day about 12:30 P.M., at which time the pin was about 80 to 90% complete. Mr. Guevara was given an invoice for $1760.00, which he paid by check. He signed the dray ticket, took the pin and left.
Mr. Carl Roussell, Sr. also testified. He corroborated his son's testimony that the job was quoted on a time and materials basis, and that the company spent a total of 37 hours on the project. He explained that 75% of prices are quoted on a time and materials basis. He stated that Mr. Guevara telephoned his superior at Gulf States for authorization before leaving the pin for milling. Mr. Roussell also testified that Gulf States stopped payment on the check and has paid nothing on the account. He explained that an account for Gulf States was opened when the job was taken. However, because Gulf States did not have an existing account with Dixie before May 5, 1992, they were required to pay for the milling of the pin upon delivery.
Roberto Guevara, an employee of Gulf States testified that he brought the partially pre-machined pin in to Dixie for milling about noon on May 5, 1992. He explained that Gulf States had undertaken the job of making the pin for one of its customers, whose ship was due to set sail the following evening. Because Gulf States did not have the proper equipment to mill the top part of the pin, it was taken to Dixie. Mr. Guevara was told the work could be completed by the following morning at a cost of about $1500.00. Mr. Guevara telephoned his superior and got approval to leave the pin with Dixie. Mr. Guevara testified that he explained to Dixie employees that he needed the pin by the following morning because additional work had to be done by Gulf States on the bottom of the pin before it could be delivered to a ship which was set to sail the following evening.
Mr. Guevara testified that he went to Dixie about 8 or 9 o'clock in the evening of May 2nd and saw that Dixie was having some trouble with the "inserts on the fly cutter breaking". However, when Mr. Guevara returned the next morning about 6 or 7, the milling was progressing normally and he was told that the pin should be ready by noon. Mr. Guevara stated that when he came to pick up the pin the next day, only about 30% *1169 of the work had been completed. He was instructed by his superior to pick up the unfinished pin. Because he was told that he could not take the pin until payment was made in full, Mr. Guevara wrote a check to Dixie for $1760.00. He took the pin, and returned to Gulf States where the remainder of the work on the pin was completed in time for the sailing. When he returned to Gulf States he was told that a stop payment order would be placed on the check he had just written.
Costas Moustacas, president of Gulf States, testified that he sent Mr. Guevara to Dixie with the boom pin because Gulf States did not have the right equipment to do the job correctly. Shortly afterward he received a telephone call from Mr. Guevara to inform him that Dixie could do the milling by the next morning at a cost of about $1500.00. Mr. Moustacas authorized the job. Mr. Guevara called again about midnight to say that the job was going slowly. Nonetheless, Mr. Moustacas decided to allow Dixie to continue. However, when he was told the pin was not ready the next morning, Mr. Moustacas told Mr. Guevara to pick it up and return to Gulf States. Mr. Moustacas admitted that Mr. Guevara telephoned him to say that the cost was $1760.00. Mr. Moustacas authorized payment because he was told that Dixie would not release the pin without payment. However, he conceded that he later stopped payment on the check and has paid nothing to Dixie.
Also contained in the record are various documents including two letters. In one of the letters written on May 12, 1992, Mr. Moustacas informed Dixie that he stopped payment on the check because the price was excessive for the uncompleted work. He offered to settle the matter for $700.00. The second letter is a certified demand letter with proof of delivery, written by Dixie on September 11, 1992 requesting the full amount of $1760.00. Plaintiff also offered into evidence the original work order authorization which is signed only by Dixie's representative, a production order, the check indicating the stop payment order, a photograph of the pin, and copies of daily time sheets to support the hours charged.
As previously stated, the trial court rendered judgment in favor of Dixie in the amount of $1,408.00 with interest from date of demand, and $800.00 in attorney fees. From comments made by the trial court contained in the record, it is apparent that the court found an open account existed and that the job was about 80% complete. Thus, the award of $1408.00.
On appeal, Gulf States denies the existence of an open account, and challenges the award of attorney fees and pre-judgment interest.
Our standard of review of the finding of facts by the trial court is restricted to the manifest error/clearly wrong standard. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Upon review we find manifest error in the trial court's determination that an open account existed between the parties.
To prevail on a suit on open account, the creditor must prove that the debtor contracted for the services on an open account. There must necessarily be a contract which gave rise to the debt. Vezina and Associates v. Gottula, 94-593 (La.App. 5 Cir. 3/1/95), 652 So.2d 85; writ denied 95-825 (La.5/5/95), 654 So.2d 332. One who sues on open account has the burden of proving the contract. Deubler Elec. v. Knockers of Louisiana, 95-372 (La.App. 5 Cir. 11/15/95), 665 So.2d 481. It is clear from the record that no written contract establishing an open account exists between the parties. The work order introduced into evidence is not signed by Gulf States.
LSA-R.S. 9:2781 C provides that an open account includes, "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions". Open account is a "legal term of art". In the normal course of business an open account is analogous to a credit account. La. Atty. Gen. Op. 87-240 (June 9, 1987); Jacobs v. Loeffelholz, 94-1123 (La. App. 4 Cir. 12/15/94), 647 So.2d 1282; Acme Window Cleaners, Inc. v. Natal Const. Co., Inc., 95-0448 (La.App. 4 Cir. 8/23/95), 660 So.2d 926. In the two above cited cases the *1170 Fourth Circuit also relied on the definitions of "open account" and "account" as defined in Black's Law Dictionary.
An account which has not been finally settled or closed, but is still running or open to future adjustment or liquidation. Open account, in legal as well as in ordinary language, means an indebtedness subject to future adjustment, and which may be reduced or modified by proof.
Account is defined as:
A detailed statement of the mutual demands in the nature of debit and credit between parties, arising out of contracts or some fiduciary relation. A statement in writing, of debits and credits, or of receipts and payments; a list of items of debits and credits, with their respective dates. A statement of pecuniary transactions; a record or course of business dealings between parties; a list or statement of monetary transactions, such as payments, losses, sales, debits, credits, accounts payable, accounts receivable, etc., in most cases showing a balance or result of comparison between items of an opposite nature.[1]
Factors to be considered in deciding whether an open account exists are:
1. Whether there were other business transactions between the parties;
2. Whether a line of credit was extended by one party to the other;
3. Whether there are running or current dealings;
4. Whether there are expectations of other dealings.
We find none of the above factors present in this case. We believe there was no "meeting of the minds" to establish an open account. However, we disagree with defendant's argument that a finding that no open account existed between the parties leaves Dixie without legal recourse.
We believe the parties entered into an oral contract for the milling of the boom pin. LSA-C.C. art 1846 provides:
When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
If the price or value is in excess of five hundred dollars, the contract must be proved by a least one witness and other corroborating circumstances.
There is sufficient evidence to show that the parties entered into an agreement for milling; and that pursuant to that agreement Dixie partially provided the services. It is also certain that Dixie was not compensated. All agree that Gulf States brought the pin to Dixie for milling and that Dixie completed part of the task. It is also uncontested that Gulf States paid nothing for the service.
The disagreement between the parties concerns the terms of the agreement, not whether an agreement was made. Further, there is no allegation that the work done by Dixie was defective in any way. Although Gulf States uses the failure of Dixie to complete the contract timely as justification for non-payment, it is clear from the record that the real dispute between the parties concerns the price charged for the amount of work completed.
Gulf States communicated the need to have the job completed by the following morning to Dixie. Both Carl and Charles Roussell testified to that; although they deny making a commitment to have the job completed at a specific time. It is obvious from the record that Dixie acted in good faith to complete the job on time. Overtime was authorized and Dixie employees worked around the clock. Milling problems, because of the hardness of the material from which the pin was manufactured, slowed the progress. That is evident from the testimony of both parties. Despite those delays, Mr. Moustacas testified that he decided to allow Dixie to continue the milling. We believe it is clear from the testimony that Gulf States did not stop payment on the check because the pin was not milled in time, but rather because it believed the cost for the amount of milling that was *1171 done was too high. That is also evident from Gulf States written offer to pay $700.00.
There is also a dispute between the parties concerning how much of the milling was actually done. The trial court found that 80% of the work had been completed. That finding was based on the testimony of Gulf States representatives that the pin was completed in time for the sailing despite the fact that Gulf States did not have the equipment necessary. Given the evidence contained in the record, we cannot rule that factual finding was manifestly erroneous.
Evidence offered concerning the price includes Dixie assertion that it did not give a firm price, but rather a quote on a time and materials basis. In brief to this court Gulf States alleges that a firm price was quoted. However, trial testimony shows that Gulf States employees were given a price of "about" $1500.00. The trial court made a factual finding that the job was quoted on a time and materials basis and that the sum of $1500.00 was an estimate. Given the circumstances and the testimony of Gulf States employees, we find no manifest error in that ruling.
On appeal, Gulf States argues that the trial court erred in awarding damages based on quantum meruit since Dixie did not specifically pled quantum meruit. We are not convinced the damages awarded by the trial court are quantum meruit. There is no need to employ a concept used to provide a remedy for a plaintiff in a quasi-contractual circumstance without another remedy in the law, to the instant case in which a valid oral contract exists. We believed the trial court simply fashioned an equitable award of damages under the circumstances of this case based on LSA-C.C. art. 2765 which reads as follows:
The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require.
Here, Gulf States contracted with Dixie to mill a boom pin and decided to take the pin back before the job was completed. While Gulf States has the right under the above article to cancel the contract, it also has the obligation to pay for the labor and materials expended by Dixie. Accordingly, we find no error in the trial court's award of damages in the amount of $1408.00 for 80% completion of the job.
The trial court also awarded attorney fees in the amount of $800.00. On appeal Gulf States asserts that award is in error. We agree. Generally, attorney fees are not due a successful litigant absent a specific contractual agreement or statute. F. Christiana & Co., Inc. v. Matt's Grocery, Inc., 95-2073 (La.App. 4 Cir. 5/8/96), 674 So.2d 419. The award of attorney fees in this case was predicated on the finding of an open account. Because we have found no open account existed between the parties, and because there is no provision by contract or by statute which would justify a grant of attorney fees in this case, we reverse that portion of the judgment which awards attorney fees.
Gulf States also challenges the award of pre-judgment interest on the basis that interest on an award in quantum meruit does not begin to run until the date of the judgment. We do not quarrel with Gulf States' recitation of the law. However, since we do not agree that the award is based on quantum meruit, we do not find error in the award of pre-judgment interest. Dixie is entitled to interest from the time the sum was due. LSA-C.C. art. 2000. We find no error in the trial court's ruling that the sum became due on the date of judicial demand.
For the foregoing reasons, we amend the judgment to exclude the award of attorney fees, in all other respects we affirm the judgment of the trial court. We further decree that each party is to bear its own costs.
AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] Black's Law Dictionary 18 (6th ed. 1990); Jacobs v. Loeffelholz, 94-1123 (La.App. 4 Cir. 12/15/94), 647 So.2d 1282, 1285.