723 So.2d 1145 (1998)
Karen BIEBER-GUILLORY, d/b/a Designs, Plaintiff-Appellant & Appellee,
v.
Charles J. ASWELL, III, M.D. and Linda V. Aswell, Defendants-Appellants & Appellees.
No. 98-559.
Court of Appeal of Louisiana, Third Circuit.
December 30, 1998.
Rehearing Denied February 5, 1999.
*1147 Mark Terrance Hoychick, Eunice, for Karen Bieber-Guillory, d/b/a Designs.
Jacque B. Pucheu, Eunice, for Charles J. Aswell, III, M.D., et al.
Anthony Craig Dupre, Ville Platte, for Linda V. Aswell.
BEFORE: THIBODEAUX, COOKS, and WOODARD, Judges.
COOKS, Judge.
This litigation arises out of a suit by Interior Designer, Karen Bieber-Guillory, against Dr. Charles J. Aswell, III and his former wife, Linda Blackman, for amounts allegedly due as a result of an agreement to remodel a family home which was destroyed in a fire. Guillory appeals the trial court's decision denying her recovery on an open account, but instead awarding her restitution under the doctrine of actio de in rem verso or unjust enrichment. The trial court awarded Guillory $45,289.00, plus legal interest from the date of judgment. Guillory also appeals the trial court's decision denying her claim for conventional interest of 1½% on the alleged open account from June 23, 1995 and attorney's fees equal to 1/3 of the principal and interest. Dr. Aswell appeals the trial court's decision denying his reconventional demand and the award of legal interest to Guillory. For reasons which follow, we affirm the judgment of the trial court awarding Guillory $45,289.00 and legal fees from the date of judgment. We also affirm the trial court's decision denying Guillory both attorney's fees and conventional interest. However, we reverse the court's dismissal of Dr. Aswell's reconventional demand.

BACKGROUND FACTS
The parties to this action have a history of business relations. Mrs. Bieber-Guillory, who operates an interior design business in Eunice, Louisiana, was hired by Dr. and Mrs. Aswell in 1990. Linda Aswell requested that she assist them in acquiring an entertainment center for the couple's living room and aid them in decorating both the dining room and bedrooms. The two invoices introduced at trial reflecting these transactions total $13,982.32. Mrs. Aswell next hired Guillory to design a room in the couple's residence for a Cotton Festival "tea" the couple sponsored in 1992. During this project, Guillory testified that other "things" evolved as the job continued, resulting in a final charge of $43,839.12 for her services on this occasion. It is undisputed, through the course of these initial dealings, the parties never reduced their agreements to writing, never discussed price in specific detail, and never disputed the fees charged nor the completed work product.
After the Cotton Festival, the parties did not maintain a working relationship, anticipating no immediate future work. However, during this time the Aswells continued to make payments toward an outstanding balance totaling roughly $12,500.00 owed Guillory for the Cotton Festival job. The Aswells eventually settled this account without incident or complaint.
In 1993, following a fire which destroyed their home, the Aswells hired Guillory to assist in remodeling their golf camp so they could live in it while the family home was being rebuilt. Again, no specific agreement regarding cost took place, no estimate was given prior to the job, and no budget restrictions were placed on Guillory by the Aswells. Dr. Aswell testified his wife was in charge of the "house;"thus he opted to take a "dire not inquire" approach, leaving such matters to the discretion of his wife.
Once the camp remodeling job was finished, Guillory billed the Aswells $107,127.69 for her services and the items allegedly purchased. Guillory testified the Aswells tendered monthly or sometimes bi-monthly payments to her while the work was in progress, but that her regular practice was to bill her clients only once when she completed a job, *1148 posting all the goods purchased on behalf of the clients and her services to an open account. The Aswells eventually settled these charges as well without incident or complaint.
While remodeling the camp, Mrs. Aswell discussed with Guillory her plan to rebuild the family residence. Eventually, the Aswells decided to employ Guillory again to aid them during this project. Dr. Aswell testified he agreed to hire Guillory and trusted his wife to deal with her on a daily basis. Guillory dealt almost exclusively with Linda Aswell during the family home project. Her responsibility as a designer was to decorate and assist in selecting and providing furnishings and accessories for the residence.
Guillory testified she verbally discussed with Mrs. Aswell the cost of certain items on a regular basis. Mrs. Aswell did not appear at trial but in a Request for Admissions submitted by Guillory, she confirmed the accuracy of Guillory's charges. Guillory testified she calculated her fee by marking up the price of items she bought for the Aswells by a certain percentage. Items acquired through her store were normally marked up 100% and items she bought from other retailers were marked up 20%. Guillory also charged a design fee and a certain percentage for any labor or construction she supervised.
For this particular project, Dr. Aswell hired Mr. Lionel DeVille, a contractor, to supervise the entire job, including Guillory's work, and to inform him if anything was done out of the ordinary. Dr. Aswell also employed Mr. Steven DeVille of Citizens Bank to supervise spending on the project. Steven DeVille never "flagged" any of the interior design expenses. Likewise, Lionel Deville never questioned Guillory's work. Guillory forwarded an invoice to the Aswells totaling $235,129.89 for her services and the purchases made on the Aswells behalf during the family home project.
The account was paid on regularly until the Aswells separated and subsequently divorced. With the advent of the dissolution of the marriage, the payments ceased and this litigation ensued.

PROCEDURAL HISTORY
Guillory filed suit claiming the Aswells outstanding balance for services and goods owed to her on an open account equaled $129,385.08 together with legal interest from judicial demand until paid, reasonable attorney's fees and all other costs of the proceedings. Linda V. Aswell filed an Answer and Amended Answer of general denial. Dr. Aswell responded to Guillory's petition by filing a reconventional demand claiming that: (1) Guillory's work was substandard, and (2) her charges on a prior job were excessive and unreasonable. As a consequence, he alleged entitlement to a credit for the alleged substandard work and a refund for goods allegedly over billed.
The trial court held Guillory, though entitled to a remedy, could not ground her claim on Louisiana's "open account" law. The trial judge reasoned as follows:
No agreement was ever reached on plaintiff's fees or prices for merchandise. Defendants knew nothing about the prices of any items furnished until billed sometimes months later. No terms were ever negotiated and no written agreement ever entered into. While there is no doubt that services were rendered and goods delivered there is no showing of a meeting of the minds between the parties....
Thus, he concluded Guillory's only remedy must be grounded on Louisiana's unjust enrichment law.
In denying, Dr. Aswell's reconventional demand alleging entitlement to a credit and refund for the work and certain items purchased during the golf camp remodeling project, the judge stated: "[s]ince the work was done and paid for before work on this project by the plaintiff the Court will not open that can of worms."

ISSUES
The parties have assigned for our review the following issues:
1. whether this is an open account;
2. whether the trial court's award of only $45,289.00 is without factual basis;

*1149 3. whether the trial court erred in failing to award attorney fees pursuant to La.R.S. 9:2781 and/or the agreement signed by Linda V. Aswell on June 23, 1995;
4. whether the court erred in failing to award conventional interest of 1½% per month;
5. whether the plaintiff attempted to collect a usurious rate of interest in the document signed by Linda V. Aswell, thus negating her right to collect legal interest, or should the plaintiff forfeit all rights to any interest;
6. whether the trial court should have made an award on the reconventional demand of Dr. Charles J. Aswell, III for the amount which the charges exceeded a reasonable fee charged in good faith

STANDARD OF REVIEW
Generally, an appellate court may not set aside the factual findings of a trial court unless there is a finding of manifest error or it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). "The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous." Butler v. Zapata Haynie Corp., 92-71, p.7 (La.App. 3 Cir. 2/23/94); 633 So.2d 1274, 1278, writ granted in part and denied in part, 94-1171 (La.7/5/94); 639 So.2d 1186, cert. denied, 513 U.S. 1017, 115 S.Ct. 579, 130 L.Ed.2d 494 (1994). To reverse the determinations of the trial court, an appellate court must:
1) find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) determine that the record establishes that the finding is clearly wrong or manifestly erroneous.
Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).

LAW AND ANALYSIS

I. Open Account
La.R.S. 9:2781(C) defines an open account as follows:
"[O]pen account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. "Open account" shall include debts incurred for professional services, including, but not limited to legal and medical services....
An open account is a legal term of art. "In the normal course of business an open account is analogous to a credit account." La. Atty.Gen.Op. 87-240 (June 9, 1987); Dixie Mach. v. Gulf States Marine Tech., 96-869, p.6 (La.App. 5 Cir. 3/12/97); 692 So.2d 1167, 1169; Jacobs v. Loeffelholz, 94-1123, p.5 (La. App. 4 Cir. 12/15/94); 647 So.2d 1282, 1285.
This Court has outlined, in a prior case, the evidence a plaintiff must present to establish the existence of an open account. In Broussard v. Guilbeaux, 93-1353, p.4 (La. App. 3 Cir. 5/4/94); 640 So.2d 509, 512 we said:
In proving an open account, plaintiff first must prove the account by showing that the record of the account was kept in the course of business and by introducing supporting testimony regarding its accuracy. Once a prima facie case has been established by a plaintiff-creditor; the burden shifts to the debtor to prove the inaccuracy of the account or to prove that the debtor is entitled to certain credits. General Elec. Co. v. La. Elec. Supply, 460 So.2d 34 (La.App. 1st Cir.1984). The amount of an account is a question of fact which may not be disturbed absent manifest error. Cole Oil & Tire Co., Inc., v. Davis, 567 So.2d 122 (La.App. 2d Cir.1990).
This required showing by the plaintiff presupposes the existence of an enforceable contract between the parties. "For there to be an action on an open account, there must necessarily be a contract which gave rise to the debt." Blackie's Rental Tool & Supply v. Vanway, 563 So.2d 350, 353 (La.App. 3 Cir.1990). A creditor suing on open account must prove that the debtor contracted for the sales on open account. Id.; Advertiser Div. v. Southwest Mortg. & Inv., 424 So.2d 1284 (La.App. 3 Cir.1982). When there is no meeting of the minds between *1150 the parties, there is no consent, thus no enforceable contract. La.Civ.Code art. 1927. Such that, if there is no enforceable contract, the plaintiff's attempt to prove the existence of an open account by establishing a prima facie case becomes extraneous.
After reviewing the record, we agree with the trial court that Guillory was owed a debt; but, it was not a debt on an open account. No agreement was ever reached on her fees or prices for merchandise. The Aswells did not know the prices of any items furnished until billed sometimes months later. No terms were ever negotiated and no agreement was ever executed. Essentially, no meeting of the minds ever took place between the parties. This lack of consent prevents us from finding that an enforceable contract ever existed.
Our decision is buttressed by this Court's decision in Vanway. In that case, no terms were negotiated, no agreement was reached on the terms of the job; no agreement was made with regard to fee or price and there was nothing in writing until the conclusion of all jobs. Consequently, we held an open account did not exist absent a "clear understanding between the parties." Vanway, 563 So.2d at 353-54. No justifiable reason or distinguishing fact exists in this case for us to deviate from our holding in Vanway.

II. The Plaintiff's Award of $45,289.00
Guillory next contests the $45,289.00 amount awarded to her by the trial court. She first argues the trial judge should have applied the doctrine of quantum meruit not unjust enrichment as a basis for her recovery. Second, she asserts the trial judge's award, based on either theory, was manifestly erroneous.
We, like the trial judge, find a judgment based on the doctrine of actio de in rem verso or unjust enrichment is appropriate. In Fogleman v. Cajun Bag & Supply Co., 93-1177 (La.App. 3 Cir. 6/15/94); 638 So.2d 706, writ denied, 644 So.2d 375 (La. 1994) we addressed the choice between employing the quantum meruit theory as opposed to applying unjust enrichment principles as a substantive ground of recovery. Relying on the Supreme Court's discussion of quantum meruit in Morphy, Makofsky & Masson v. Canal Place, 538 So.2d 569 (La. 1989) we recognized "quantum meruit, as a substantive basis for recovery is now viewed with disfavor by Louisiana law." Fogleman, 638 So.2d at 708. We also noted the United States Fifth Circuit reached the same conclusion in SMP Sales Manag't, Inc. v. Fleet Credit Corp., 960 F.2d 557, 560 (5th Cir. 1992), citing the holding in Morphy and stating:
Although both the district court and the parties relied on quantum meruit as a substantive basis of recovery, it is not recognized as such in Louisiana but is only used as a measure of compensation or price in quasi-contract or when none is stated in a contract....
Thus, "where a plaintiff seeks to employ a quantum meruit theory as a substantive ground for recovery, we believe the analysis is more properly made under the doctrine of actio de in rem verso or unjust enrichment." Fogleman, 638 So.2d at 709.
An action for unjust enrichment requires proof of five elements:
(1) an enrichment of the defendant;
(2) an impoverishment of the plaintiff;
(3) causation between the enrichment and the impoverishment;
(4) an absence of justification or cause for either the enrichment or the impoverishment; and
(5) no other remedy available at law.
Edwards v. Conforto, 636 So.2d 901 (La. 1993).
The trial court did not err in applying the doctrine of unjust enrichment in this instance. All the elements have been satisfied. The Aswells were enriched, and Guillory was impoverished. Moreover, the direct and obvious connection between the two obviates the need for any full discussion of the causal relationship between the enrichment and the impoverishment. There also was no justification or cause for either the enrichment or the impoverishment. With respect to the fifth element, we are generally required to determine "whether there exists a contract under which the plaintiff may recover." Fogleman, 638 So.2d at 709. As mentioned, *1151 we agree with the trial judge's finding that no contract existed between these parties; thus no other remedy at law exists upon which to base Guillory's claim for relief.
In Fogleman, we explained:
Louisiana jurisprudence, when formulating a substantive theory of recovery in the absence of a contract (regardless of theory being denominated action de in rem verso, unjust enrichment or even "quantum meruit"), has consistently applied a two-fold limitation to the recovery. First, the plaintiff cannot recover more than the actual value of his services and materials, plus a fair profit; and secondly, the plaintiff cannot recover more than defendant was enriched by plaintiff's services. See Custom Builders & Supply, Inc. v. Revels, 310 So.2d 862 (La.App. 3 Cir.1975), citing Planiol, Chapter III Section 93B (Unjust Enrichment). See also Swiftships, Inc. v. Burdin, 338 So.2d 1193 (La.App. 3 Cir. 1976).
Id. at 710. Essentially, an individual establishing his right to recover under the doctrine of unjust enrichment is entitled to recover a reasonable amount for his services. Brankline v. Capuano, 94-1630 (La.App. 3 Cir. 5/3/95); 656 So.2d 1. There is no specific test which must be applied to determine the reasonable value of such services. It is a matter of equity depending upon the circumstances of each case. Jones v. City of Lake Charles, 295 So.2d 914 (La.App. 3 Cir. 1974). However, a court may not award speculative damages which have not been established with some degree of detail and specificity. Smith v. First Nat'l Bank of DeRidder, 478 So.2d 185 (La.App. 3 Cir. 1985); Smith v. White, 411 So.2d 731 (La. App. 3 Cir.1982), writ denied, 413 So.2d 508 (La.1982).
Guillory has established her right to recover against the Aswells under the doctrine of unjust enrichment. Guillory asserts she is entitled to $129,385.08 for her goods and services which represents the balance due on the bill forwarded to the Aswells totaling $256,785.08. The trial judge found $172,689.00 was a reasonable and equitable amount to compensate Guillory for her services and the goods furnished during the family home project. He then allowed the Aswells a credit of $127,400.00, and directed them to pay the balance of $45,289.00 to Guillory.
Since the assessment of an award based on the doctrine of unjust enrichment or quantum meruit is analogous to an award of damages, the record must clearly reveal the trial court abused its discretion before we will disturb the award. Brankline, 656 So.2d 1; Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Our role in reviewing general damages is not to decide what we consider an appropriate award, but rather to review the exercise of discretion by the trial court. "Each case is different and the adequacy and inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration." Youn, 623 So.2d at 1260.
In this case there was conflicting testimony as to what an appropriate mark-up is on items purchased by an interior designer for her customers. Also, out of the 180 individual items billed to the Aswells account, Guillory was only able to locate twelve invoices. These twelve invoices totaled only $26,000.00 which was approximately 10% of the total amount billed for the house project. Guillory's inability to present written documents to support her claim was a failure the trial judge obviously weighed in assessing the reasonableness of her claim. Considering the herculean task confronting the trial court, we find no abuse of discretion in his assessment of the appropriate award in this case.

III. Attorney's Fees and Conventional Interest
Next, Guillory claims she is entitled to attorney's fees pursuant to La.R.S. 9:2781 and/or the agreement signed by Linda V. Aswell on June 23, 1995. Attorney's fees are not recoverable unless authorized by contract or statute. Rhodes v. Collier, 215 La. 754, 41 So.2d 669 (La.1949).
La.R.S. 9:2781(A) reads in pertinent part:
When any person fails to pay an open account within fifteen days after receipt of *1152 written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgement is rendered in favor of the claimant.
Again, the transaction between the Guillory and the Aswells did not meet the requirements of an open account. Guillory is not entitled to recover attorney fees pursuant to the reference statute.
We turn to address whether Linda V. Aswell contracted to pay Guillory attorney fees and conventional interest. Guillory presented a document signed by Mrs. Aswell and dated June 23, 1995 where she acknowledged and confirmed:
that the services and materials above listed were provided by Designs at my request. Terms included payment within (30) days, interest of 1.5% /month on balances thereafter and reasonable attorney's fees if turned in for collection.
Guillory never attempted to secure Dr. Aswell's signature or to inquire whether he agreed with the stated terms and conditions. The trial court held that this "after the fact" document was not a contract sufficient to bind Dr. Aswell for payment of attorney fees and conventional interest. We agree.
Guillory knew on June 23, 1995 that Dr. Aswell was contesting the total amount billed to him for the work done on the house. She was aware that the Aswells rarely, if ever, conferred on her work and the amount she billed them. She also knew the Aswells were in the midst of a divorce when she presented the June 23 document to Mrs. Aswell and asked for her signature. The signed document in essence was a "self-help" attempt to collect a disputed debt. Such practice is against public policy. Like the trial judge, we refuse to sanction it by validating the alleged contract to pay attorney's fees and conventional interest.

IV. Legal Interest
Dr. Aswells asserts the 1.5% per month interest Guillory attempted to collect was usurious. As such, Dr. Aswells claims since Guillory intended to collect a usurious rate of interest she must now forfeit all interest including legal interest.
A rate of interest is usurious when it exceeds the statutory maximum. In this case the maximum rate allowed at the time of contracting was 12% per annum. La. Civ. Code art. 2924. Guillory attempted to collect interest at 18% per annum. The rate of interest contained was usurious.
Dr. Aswell cites La.R.S 9:3501 which states:
Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted.
In Bonfanti v. Davis, 487 So.2d 165 (La.App. 3 Cir.1986) we concluded this provision requires a creditor who charges a usurious rate of interest to forfeit all interest, except legal interest from the date of judicial demand. Because interest on an unjust enrichment award does not begin to run until the date of judgement, Guillory is entitled to legal interest from that date. Dixie Mach. v. Gulf States Marine Tech., 96-869 (La.App. 5 Cir. 3/12/97); 692 So.2d 1167.

V. Dismissal of the Defendant's Reconventional Demand
Finally, Dr. Aswell assigns as error the trial court's dismissal of his reconventional demand.
La.Code Civ.P. art. 1061(A) provides:
The defendant in the principal action may assert in a reconventional demand any causes of action which he may have against the plaintiff in the principal action, even if these two parties are domiciled in the same parish and regardless of connexity between the principal and reconventional demands.
Here, Dr. Aswell reconvened seeking damages from Guillory for charges of $107,000.00 allegedly incurred during the camp remodeling project. The camp had a fair market value of $41,500.00 prior to remodeling. After completion of the project, its fair market value ranged from $50,000.00 to $55,000.00. Dr. Aswell alleges Guillory's charges were not in good faith. Louisiana law requires that good faith shall govern the conduct of *1153 both parties in all aspects of an obligation. La.Civ.Code art. 1759. Dr. Aswell's reconventional petition was sufficient to state a claim upon which relief may be rendered; and this cause of action was not prescribed.
The trial judge in his reasons for judgement stated:
The court was astonished at plaintiff's charges for her work at the Aswell's camp. Since the work was done and paid for before work began on this project by the plaintiff, the court will not open that can of worms. It is obvious from the plaintiff's testimony that business ethics was not offered amongst the courses she took toward her degree. Had it been a lawyer rather than an interior decorator the disciplinary council would have had a ball.
Apparently, the court found Guillory's charges were not in good faith. However, the trial judge simply declined to entertain the reconventional demand claim. The district courts must exercise jurisdiction if proper. Without any reason for declining to exercise jurisdiction other than not wanting to "open a can of worms," the judge abused his discretion by dismissing Dr. Aswell's reconventional demand with prejudice. We therefore remand the reconventional demand for trial.

DECREE
For the foregoing reasons, the judgment of the trial court awarding Guillory $45,289.00 and legal fees from the date of judgment under the doctrine of actio de in rem verso or unjust enrichment is affirmed. We likewise affirm the trial court's decision denying Guillory both attorney's fees and conventional interest. We reverse and remand for further proceedings, the trial court's dismissal of the defendant's reconventional demand relating to the camp remodeling project. All costs of this appeal are assessed against Karen Bieber-Guillory.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
WOODARD, J., dissents in part and assigns written reasons.
WOODARD, J., dissenting in part.
Respectfully, I dissent in the following ways, for the following reasons.
There is no legal, or reasonable factual basis, for the trial court's rulings on Karen Bieber-Guillory's (Bieber) assignments of error, numbers one through four, and Dr. Aswell's assignment of error, number two, concerning its the majority's decision to remand.
First, regarding the question of whether there was a contract, it must be noted that during the marriage, the record supports that Dr. Aswell left the decorating up to Ms. Aswell, giving her the exclusive power to bind the community. La.Civ.Code arts. 2360 and 2361. Reviewing the wisdom of her decisions after the fact and in conjunction with a divorce does not negate the binding effects of Ms. Aswell's former commitments on behalf of the community and, thus, on behalf of Dr. Aswell. Furthermore, apparently, until the divorce, he had had no problems with her prior decisions; he was willing and accustomed to paying what many of us would consider unthinkable costs for decorating services, and the Aswells and Bieber had an extensive work history together, which methods of working, billing, and costs by Bieber were no deviation from the job in question. He should not now be permitted to circumvent his obligation to Bieber by claiming that he did not know of the expenditures since he chose to leave the project to his wife to manage exclusively.
The record overwhelmingly supports that Bieber has proved the existence of a valid oral contract with the Aswells, based on La. Civ.Code art. 1846 which the trial judge failed to apply. The court believed simply that there was "no meeting of the minds" and, therefore, no contract because there was no agreed upon overall price. He stated:
No agreement was ever reached on plaintiff's fees or prices for merchandise. Defendants knew nothing about the prices of any items furnished until billed sometimes months later. No terms were ever negotiated and no written agreement ever entered into. While there is no doubt that service was rendered and goods delivered there is no showing of a meeting of the minds between the parties....
*1154 This statement is clearly in contravention of the evidence in the record in which Ms. Aswell acknowledged that the listed services were performed in compliance with her request and considering the Aswells' prior work experience with Bieber in which they were obviously aware of her terms and prices. Moreover, this failure to apply Article 1846, I believe to be legal error, requiring a de novo review of this issue, as La.Civ. Code art. 1846 does not require an agreement on the price in order for there to be a valid contract. It provides:
When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.

(Emphasis added.)
It is well settled that a party in the litigation may offer its own testimony to satisfy the "one witness" pre-requisite set forth by the statute. Deubler Elec. Inc. v. Knockers of La. Inc., 95-372 (La.App. 5 Cir. 11/15/95); 665 So.2d 481. However, the corroborating circumstances required by the statute must come from a different source other than the plaintiff. Ms. Aswell is that source. On June 23, 1995, she signed a document, which contained a list of prices for goods and services, admitting that the listed services and materials were provided by Designs at her request. This clearly negates the majority's finding that the statute provides that "when there is no meeting of the minds between the parties, there is no consent, thus no enforceable contract," as there was obviously consent in the present case. The majority relies on Article 1927 and believes that the Vanway decision "buttresses" its position; however, Vanway is not applicable, as it presents a set of facts clearly different from the instant case, and Article 1927 supports a finding that there is a valid contract in the sense that it requires no more than what La.Civ.Code art. 1846 requires. Finally, the following circumstances are consistent with the existence of a valid oral contract and are evidence of manifest error, as well.
When Bieber undertook to work on the Aswells' home, she had performed work for them on three prior occasions. Nothing in the "home job" differed from what she had done on the prior occasions. Standard operating procedure between the Aswells and Bieber was the same throughout their relationship on all projects. For example, Bieber and Ms. Aswell, not Dr. Aswell, were always in charge of the project; no contract was ever memorialized in writing. Apparently no total price was agreed upon prior to performance and the final price of each prior work was not inconsistent with the one charged for the home.
None of the above described facts are in dispute. Therefore, not only was there legal error in the trial court's failure to apply La.Civ.Code art. 1846, but it also does not appear that the trial court gave proper consideration to the above stated unrebutted facts, rendering its decision to be manifestly erroneous. Additionally, it is noteworthy that the lack of agreement on the total price and methods of billing between the Aswells and Bieber are often no different from the agreement between an attorney and a client. Yet, we have no problem concluding that there is a binding oral contract. See generally Deutsch, Kerrigan & Stiles v. Fagan, 95-0811 (La.App. 1 Cir. 12/15/95); 665 So.2d 1316.
Once, it is established that a valid contract was formed, the existence of an open account is triggered by factors defined by our civil code and jurisprudence as follows.
First, La.R.S. 9:2781(C) states in pertinent part:
For the purposes of this Section and Code of Civil Procedure Articles 1702 and 4916, "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. "Open account" shall include debts incurred for professional services, including, but not limited to, legal and medical services. For the purposes of this Section *1155 only, attorney fees shall be paid on open accounts owed to the state.
(Emphasis added.)
In Jacobs Chiropractic Clinic v. Holloway, 589 So.2d 31 (La.App. 1 Cir.1991), in proving open accounts the court held that the creditor must show by a preponderance of the evidence that the record of the account is kept in the ordinary course of business. Such a showing requires the introduction of corroborating testimony regarding its accuracy. If the claimant meets her burden of proof, the burden shifts to the debtor to prove the inaccuracy of the account, or to show that he is entitled to certain credits.
In reviewing this issue in the instant case, I suggest that, again, a de novo review is appropriate since the trial judge only found that there was "no meeting of the minds" and did not address the issue of whether Bieber had met the prerequisites to the existence of an open account.
The record reveals that Bieber has met all of the requirements of establishing the existence of an open account, specifically that: there is a balance owed on the account; the Aswells' debt was incurred because of Bieber's professional services as an interior decorator. In support thereof, Bieber produced an itemized statement which was Ms. Aswell confirmed on June 23, 1995. Dr. Aswell could not nullify the characterization of the transactions between the two, as being that of an open account, by trying to show that the account was inaccurate, or that he is entitled to credits. I suggest that Bieber has clearly met her burden of proof just, as would be so if she were an attorney dealing with a client.
In fact, Dr. Aswell's claim of entitlement to credits, is unsubstantiated. The evidence he present included an estimate by Mr. Sylvan Lavergne who provided used values for the items Bieber used, which were new when submitted. Further, Dr. Aswell does not tell us how much furniture Ms. Aswell removed from the home upon their separation, which could account for his complaint that they did not receive enough items for their money. Finally, Dr. Aswell claims that Ms. Bieber's services were substandard. Implied in every contract is the obligation that the obligor perform its services in a workman like fashion. Usually, the standard is evaluated according to the standard of the specific profession as well as its local customs. In the instant case, however, Dr. Aswell does not specify exactly how Bieber's performance was substandard. In other words, he does not allege any defects in her performance as well as in any of her practices which disregarded that which is customary for her profession. Thompson v. Knight, 238 So.2d 808 (La.App. 1 Cir.1970)
Considering all of the above, I believe that Bieber proved the existence of an open account.
Finally, I agree with the majority that the trial court improperly dismissed Dr. Aswell's reconventional demand. However, I do not believe that it is necessary to remand this case to the trial court to determine its merit, as I find that all that is needed to decide that issue is in the record. Having reviewed same, it appears to me that he has not proved such a claim.