# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 05-1560


# LUMBER INVESTORS, LLC d/b/a MARTIN BUILDING MATERIALS

# VERSUS

# HERMAN HUMPHRIES


**************
APPEAL FROM THE
PINEVILLE CITY COURT, WARDS 9,10, and 11
PARISH OF RAPIDES, DOCKET NO. 5-0240
HONORABLE J. PHILLIP TERRELL, JR., PRESIDING


**************
**SYLVIA R. COOKS**
**JUDGE**
**************


Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Marc T. Amy, Judges.


**AFFIRMED.**


Herman M. Savoie, Jr.
Attorney at Law
P.O. Box 712
Alexandria, Louisiana 71309
(318) 448-8002
(318) 442-6811
COUNSEL FOR PLAINTIFF/APPELLEE:
    Lumber Investors, L.L.C. d/b/a Martin Building Materials

Jerold Edward Knoll
The Knoll Law Firm
P.O. Box 426
Marksville, Louisiana 71351
(318) 253-6200
COUNSEL FOR DEFENDANT/APPELLANT:
    Herman Humphries

**COOKS, Judge.**

## STATEMENT OF THE CASE

This is a suit on an open account. Lumber Investors, L.L.C. d/b/a Martin Building Materials (Martin) sued Herman Humphries for $2,923.62, the balance due on Mr. Humphries' account with Martin. Charges to the account were made by Amy and Scott Robertson. The only fact in dispute was whether Mr. Humphries consented to the charges. The trial court found that he did. For the reasons assigned below, we affirm the decision of the trial court.

## STATEMENT OF THE FACTS

Herman Humphries opened an account in 1989 with Martin for the purchase of building materials for his home. Even after his home was completed, Mr. Humphries allowed Amy and Scott Robertson to use the account to charge materials for their re-modeling business. It appears the parties had an arrangement whereby the Robertsons would use the credit account to charge materials and then pay Mr. Humphries when he received statements from Martin. A dispute arose between the parties concerning a $380.00 bill. Mr. Humphries testified he called Martin to complain about the bill and they told him they were going to close the account. Mancy Howell, Martin's bookkeeper, remembered the conversation regarding the $380.00 bill. She testified she spoke to Mr. Humphries "[a]nd I told him I was not going to open the account up unless he authorized any charges."

In December 2004, Amy Robertson went to Martin to purchase building materials. She requested the materials be charged to Mr. Humphries' account. She was informed by Merlene Shackelford, a sales person for Martin, that the account was on hold and Mr. Humphries would have to give approval for the charges. Amy called Mr. Humphries and Ms. Shackelford spoke directly to Mr. Humphries. Ms.

2

Shackelford testified: "Amy talked to him. A very short conversation and she told him, you need to tell this saleslady that it's okay for us to charge on the account. At that point I took the phone and he told me, 'Go ahead and let them have whatever they needed on the account.'" Mr. Humphries also spoke to Martin's bookkeeper, Mancy Howell. Ms. Howell testified: "[H]e told me that it was okay for her to charge."

Mr. Humphries does not dispute that he spoke to Amy, Ms. Shackelford or Ms. Howell in December 2004 regarding charges on the account. He does dispute that he gave his approval for the charges to be posted to his account. The trial court concluded Mr. Humphries did give prior approval for the charges to be made on his account with Martin.

## LAW AND DISCUSSION

Louisiana Revised Statutes 9: 2781 (D)defines an open account, as follows:

> Open account includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions.

In order to recover in an action on an open account, a creditor must prove the account by showing that the record of the account was kept in the course of business and by introducing testimony regarding its accuracy. Once a prima-facie case has been established by the creditor, the burden shifts to the debtor to prove the inaccuracy of the account or to prove the debtor is entitled to certain credits. *Beiber-Guillory v. Aswell,* 98-559 (La.App. 3 Cir. 12/30/98), 723 So.2d 1145. Mr. Humphries does not dispute he had an account with Martin. The account was opened in 1989 when Mr. Humphries was building his home. Martin submitted into evidence the invoices totaling $2,923.62 for building materials charged to Mr. Humphries' account by the Robertsons.

3

The evidence suggests Mr. Humphries and the Robertsons had an arrangement whereby the Robertsons would charge on Mr. Humphries' account and then pay Mr. Humphries for any amounts billed. The Robertsons had been using the account for several years beginning in 1989. At one point, when the Robertsons failed to pay a $380.00 bill, a dispute arose. Mr. Humphries testified:

Q:      Had she [Amy] told you that she would pay for these . . . . had she ever charged to your account and paid the bills before?

A:      Once before Amy and them had charged on my account and I told them . . . .I talked to Amy and said she was trying to establish an account with Martin, she said. So, I said, okay, go ahead. And that's whenever the dispute come up on the $380 something dollars.

In fact, Mr. Humphries' wife, Martha, who handled the bookkeeping, was well aware of the arrangement between the Robertsons and Mr. Humphries regarding the account at Martin. Mr. Humphries testifed:

Q: Did you subsequently receive bills from Martin Building Materials on your account?

A: I never saw the bill. Let me put it this a way, bills, I'm sure came in, but Martha got the bills and she knew we had not charged anything at Martin so she sent it to Amy and Scott.

Mr. Humphries now contends he did not give approval for the charges made by Amy in December 2004. He does not deny the telephone conversations took place; however, he contends Martin is mistaken in its belief he agreed to the charges. When questioned regarding the telephone conversations, he testified, as follows:

Q:      Do you recall Mrs. Robertson calling you on the day she came in to purchase these building materials?

A:      I was working the store when Amy called me that morning, yes. And I had customers and I do remember Amy calling me but I do not remember telling Amy yes or no. I told Eddie I remember I was waiting on some customers and one of the customers handed me some money and he . . . it was for a drink or something or another, I think it was $1.25 a piece, and he asked me was that correct and I said yes. And I don't remember saying anything to

4

Amy whether I did or didn't.  But I did talk to Mancy that morning.

Q:      Okay.  Did you tell her it was okay for her . . .

A:      I told . . . I said . . . I don't care what ya'll do.  I'm not charging anything and I'm not paying anything.  That was my statement to Mancy.

. . . .

Q:      So, you do remember speaking to Amy?

A:      I did.

Q:      Did you tell Amy she couldn't charge anything?

A:      I did not tell Amy she could not charge anything.  No, I did not.

. . . .

A:      I told her . . . .Well I was talking to somebody else and I said okay.  But she said that I had to talk to Mancy and that's whenever they gave the phone to her I assume or transferred the call to her, whatever they did.  I don't know.

Mr. Humphries' version of the facts is contradicted by three witnesses, all of whom testified he gave approval for the charges to be made on his account. Moreover, the testimony indicates numerous statements were sent to Mr. Humphries prior to suit being filed.  Mr. Humphries did not call Martin to dispute the charges made on his account.  The trial court apparently concluded Mr. Humphries' account of the telephone conversation was unbelievable and found he approved the charges on his account.  Credibility determinations are within the purview of the trier of fact. An appellate court may not set aside the factual findings of a trial court unless manifestly erroneous or clearly wrong.  *Rosell v. ESCO*, 549 So.2d 840 (La. 1989). We have reviewed the testimony of the parties and find no error in the decision of the trial court.

**DECREE**

Based on the foregoing review of the record, we affirm the decision of the trial court. All costs of this appeal are assessed to Herman Humphries.

**AFFIRMED.**