NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1522

SUPERIOR SHIPYARD & FABRICATION, INC.

VERSUS

M & T OCEANOGRAPHIC RESEARCH, LLC

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 93,577-J
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

REVERSED AND REMANDED.

R. Chadwick Edwards, Jr.
Edwards & Bellaire, L.L.C.
P. O. Box 217
Abbeville, LA 70511-0217
(337) 893-2884
COUNSEL FOR PLAINTIFF/APPELLEE:
    Superior Shipyard & Fabrication, Inc.

Sean D. Kennedy
I. Matthew Williamson
MacHale A. Miller
Miller & Williamson, L.L.C.
1100 Poydras St., Suite 3150
New Orleans, LA 70163-3150
(504) 525-9800
COUNSEL FOR DEFENDANT/APPELLANT:
    M & T Oceanographic Research, LLC

**GREMILLION, Judge.**

Defendant/appellant, M&T Oceanographic Research, L.L.C. (M&T), appeals the trial court's rulings regarding the sequestration of the vessel, M/V *Blazing Seven*, and its grant of summary judgment in favor of plaintiff/appellee, Superior Shipyard & Fabrication, Inc. (Superior). For the following reasons, we reverse the trial court's rulings and remand for further proceedings.

**FACTS**

M&T is engaged in procuring charter vessels for academic research conducted by such agencies as Louisiana State University, Texas A&M University, and the National Oceanographic & Atmospheric Administration (NOAA). In the course of its business, M&T contracted with SeaCrest Marine, L.L.C., owner of the M/V *Brody Paul*, to charter the vessel for research. Thereafter, M&T contracted with Superior to have an A-frame and boom built to allow the *Brody Paul* to tow sonar arrays. In addition to fabricating the A-frame and boom, Superior did other work that it maintains was necessary to mount the assembly and otherwise prepare the vessel for its voyages. Superior also maintains that all of the work it performed was authorized by Thomas Tunstall, an alleged principal of M&T.

M&T argues that the *Brody Paul* was already at Superior's shipyard in Golden Meadow, Louisiana, when it chartered the vessel and that work was already being done on the vessel at SeaCrest's direction. Therefore, M&T maintains that much of the work for which it was invoiced by Superior was actually SeaCrest's responsibility. When it received the invoices, M&T contested many of the charges, but paid those it did not. The total amount of the invoice was $89,827.80. M&T paid $10,000.00 and contested the remainder.

The work done by Superior was performed between August 30, 2010, and October 6, 2010. M&T maintains that the A-frame fabrication was ordered on

August 30 and completed on September 1, after which the *Brody Paul* was taken on a voyage on behalf of NOAA. That voyage was completed on September 7 and the *Brody Paul* returned to Superior's shipyard. M&T terminated its charter of the *Brody Paul* in December 2010 and chartered the M/V *Blazing Seven*.

On February 18, 2011, Superior filed a Petition for Writ of Sequestration in which it alleged that M&T removed the A-frame from the *Brody Paul* and installed it on the *Blazing Seven*, and that pursuant to La.Civ.Code art. 3237 and La.Code Civ.P. art. 3571, it possessed a privilege on the *Blazing Seven*. Therefore, Superior alleged, it was appropriate for the Vermillion Parish Sheriff to seize the vessel and hold it at its berth.[1] Superior posted a replevin bond of $200,000.00 with its petition. The writ of sequestration was executed by the sheriff on February 18, 2011.

On February 22, 2011, M&T filed an emergency motion for expedited hearing on its motion to dissolve the writ. A special fixing was assigned and the matter heard on February 23 in Lafayette Parish, after which the trial court denied the motion to dissolve the writ on the ground that while the privilege may not have attached to the *Blazing Seven*, it did attach to the A-frame that was still mounted on the vessel. On February 24, 2011, M&T filed a similar motion, which was denied with the notation that the motion was rendered moot because the trial court had heard the matter that day.

The back-and-forth over the sequestration of the vessel continued with filings to dissolve the sequestration filed on February 25, February 28, and March 3, in which M&T moved to dissolve the sequestration by filing a bond in the amount of $75,873.36.

---

[1] The *Blazing Seven* was berthed at Intracoastal City Dry Dock in Abbeville, Louisiana, at the time the petition was filed.

2

Superior amended its petition on March 3 to allege that M&T and its principals, Marcie Guilbeau and Thomas Tunstall, were indebted to it on open account for $95,593.22 plus interest, attorney fees, and costs of court. The following day, the trial court granted M&T's last motion to dissolve the sequestration. On March 17, 2011, M&T, Guilbeau, and Tunstall answered the amended petition and denied their indebtedness to Superior. Tunstall and Guilbeau also interposed peremptory exceptions of no cause of action. M&T also excepted on the grounds that Superior's petition failed to state a cause of action in open account. Tunstall also denied that he was a member of M&T.

On March 24, 2011, Superior filed what it styled a partial motion for summary judgment, but which prayed for judgment in the total amount of M&T's alleged indebtedness of $95,593.22, subject to credit for payments of $10,000.00 and $14,046.10, plus interest of 1.5% per month, reasonable attorney fees, and costs of court. In support of its motion, Superior attached the affidavits of James Paul Autin, a supervisor with Superior, who attested that all of the invoiced work was authorized by Tunstall, and that M&T removed the *Brodie Paul* from Superior's shipyard on October 6, 2010. It also attached the affidavit of Scott Michael Duet, the sales public relations officer for Superior, who testified that all of Superior's work was done pursuant to a written contract signed by Guilbeau on behalf of M&T. That contract specified that Superior had a lien on the vessel for all work performed, and that Guilbeau agreed to be personally liable for the debt. It described the work as "FABRICATE & INSTALL A-FRAME AND BOOM FOR SONAR AS DIRECTED."

On March 28, 2011, M&T filed a notice of its intent to seek supervisory writs from this court to review the trial court's denial of its motion to dissolve the sequestration. No application was ever filed, though.

M&T opposed Superior's motion for summary judgment and attached the unsworn statement of Tunstall. This opposition was filed on April 21. Also on April 21, Superior filed a motion to strike Tunstall's statement because it did not constitute an affidavit as required in La.Code Civ.P. art. 966. M&T's explained that it was unable to obtain Tunstall's sworn affidavit because Tunstall was at sea on a charter for LSU and had no access to a notary public.

The motion to strike and the motion for summary judgment were heard on April 25, 2011. The trial court struck Tunstall's statement because it did not constitute an affidavit and granted summary judgment. Counsel for M&T requested that his client be granted a continuance to allow for Tunstall's statement to be notarized. The trial court indicated that had a motion for a continuance been filed earlier, it might have considered that request, but under the circumstances it was not inclined to grant the request. Summary judgment in the amounts prayed for was granted.

After Tunstall returned from sea, he executed an actual affidavit. M&T moved for new trial, which the trial court denied.

### ASSIGNMENTS OF ERROR

1.    The trial court committed legal error by issuing a writ of sequestration and compounded that error by failing to grant the motion to dissolve the writ of sequestration and seizure of the BLAZING SEVEN upon M&T demonstrating that La. Civil Code Art. 3237 did not confer on Superior the right to assert a lien against a vessel with which it had no contact and on which it had performed no work;

2.    The trial court committed legal error by finding that Superior was entitled to a materialmen's lien on the items installed aboard the BLAZING SEVEN and upholding the sequestration and seizure of the vessel on the basis of that erroneous finding;

3.    The trial court abused its discretion by refusing to grant a brief continuance of the hearing on Superior's motion for summary judgment to permit Mr. Tunstall to return to shore, appear before a

notary and sign the affidavit attached to M&T's opposition memorandum;

4. The trial court committed reversible error by denying M&T's motion for new trial on the granting [of] summary judgment in favor of Superior where the judgment clearly appeared contrary to Superior's own evidence;

5. The trial court committed reversible error by denying M&T's motion for new trial on the granting [of] summary judgment in favor of Superior where M&T obtained new evidence, the notary's seal on Mr. Tunstall's affidavit, that could not with due diligence have been obtained prior to the hearing on the motion for summary judgment due to Mr. Tunstall's absence while working offshore; and

6. The trial court abused its discretion by denying M&T's motion for new trial on the entry of summary judgment in favor of Superior after excluding Mr. Tunstall's countervailing testimony inasmuch as the denial resulted in a miscarriage of justice and deprived M&T of an opportunity to present its substantive defenses and obtain a judgment on the merits rather than by what amounted to a default.

Superior has responded to the appeal and moved to strike portions of M&T's brief as making factual assertions unsupported by the record. Superior also moved to strike any portion of M&T's brief referencing the denial of M&T's motion for new trial as a non-appealable judgment. Further, Superior interposed exceptions of res judicata, asserting that the judgment regarding the sequestration of the *Blazing Seven* is final and cannot now be raised on appeal; no cause of action, arguing that M&T's answer to the amended petition failed to raise the sequestration as an issue; no right of action, by which Superior maintains that M&T failed to plead ownership or other interest by which it could be considered a proper party to dispute the sequestration; and absence of justiciable interest, given that the writ of sequestration has now been dissolved.

## ANALYSIS

*Superior's Motion to Strike*

Superior maintains that several of M&T's factual assertions—whether the invoiced work was performed at its request or at the request of SeaCrest, whether

the invoiced work was all performed on the *Brody Paul*, whether the hours Superior billed were all necessitated by fabrication and installation of the A-frame and boom or were caused by Superior's errors that required having to repeat work already done, and whether the hours billed were inflated—are derived solely from the unsworn statement of Tunstall, which was stricken by the trial court in response to Superior's motion to strike.

Generally, even sworn affidavits constitute hearsay. *Arkla, Inc. v. Maddox and May Bros. Casing Serv., Inc.*, 624 So.2d 34 (La.App. 2 Cir. 1993). Exceptions for their admissibility are found in various statutes, including La.Code Civ.P. arts. 966 and 967, which govern motions for summary judgment. Unsworn statements, such as Tunstall's, that are not affidavits nor are attached to an affidavit can be given no weight in determining whether a genuine issue of material fact exists. *Reynolds v. City of Pineville*, 03-77 (La.App. 3 Cir. 7/16/03), 851 So.2d 1245, *writ denied*, 03-2718 (La. 12/19/03), 861 So.2d 569. We agree with Superior that Tunstall's statement should not be considered on appeal.

*Superior's Exceptions of Res judicata, No Cause of Action, No Right of Action, and Lack of Justiciable Issue*

Superior maintains that the issue of the sequestration of the *Blazing Star* is barred from consideration because M&T noticed its intent to apply for supervisory writs and abandoned that effort. This abandonment, according to Superior, subjects the issue of sequestration to issue preclusion under La.R.S. 13:4231. Further, because M&T failed to raise the issue of the validity of the sequestration or to assert a reconventional demand regarding the sequestration, "it failed to state a cause of action for relief relating to the sequestration prior to the entry of a final judgment." Appellee's Motion to Strike and Exceptions at ¶ 6. Superior also argues that because M&T failed to plead ownership or exclusive control of the

*Blazing Seven*, it has no right to bring any action regarding the sequestration. Lastly, Superior argues that because M&T ultimately succeeded in having the sequestration dissolved, the matter of the sequestration no longer presents a justiciable controversy

Sequestration is a provisional remedy under the Louisiana Code of Civil Procedure, available to one claiming ownership or the right to possession of property, or who claims a mortgage, security interest, lien, or privilege over that property when the defendant has it within its power to conceal, dispose of, or waste the property or revenues therefrom, or to remove the property from the parish during the pendency of an action. La.Code Civ.P. art. 3571. An order denying dissolution of a sequestration has long been recognized as interlocutory and not subject to direct appeal. *See Wolff v. McKinney*, 21 La.Ann. 634 (1869). On the basis of that proposition, it becomes apparent that M&T had two choices: it could apply for writs or defer the issue for its appeal should it not prevail at the trial court.

The fact that M&T began the process of applying for writs is irrelevant. The denial of the motion to dissolve the sequestration is interlocutory, and we have not previously ruled on the propriety of that denial.

Superior's contention that res judicata might bar M&T's appeal carries no merit. Res judicata bars the relitigation of causes of action in subsequent actions that have been decided by valid and final judgments. La.R.S. 13:4231. Section 4231 specifically provides that appeal or other direct review is excepted from the doctrine. And as we have already pointed out, the denial of M&T's motion to dissolve the sequestration is not a final judgment. The exception is denied.

The exception of no cause of action is a peremptory exception governed by La.Code Civ.P. art. 927. It tests the legal sufficiency of the petition to determine whether the law affords a remedy under the facts alleged. *Moreno v. Entergy*

7

*Corp.*, 10-2268 (La. 2/18/11), 64 So.3d 761. Superior is correct in stating that M&T asserted no reconventional demand from the sequestration. However, the amending pleading by which Superior asserted its demand on open account was filed the day before the trial court dissolved the sequestration, and M&T's answer to that was filed after the court dissolved the sequestration. In other words, for the purposes of the amended petition, there was no allegation by Superior regarding the sequestration and nothing that M&T was required to plead about the sequestration. It simply was not an issue by that time. M&T's failure to plead anything in its answer to the amended petition does not affect its ability to complain to this court about it. Superior's exception of no cause of action is denied.

Superior also excepts on the ground that M&T failed to plead ownership or exclusive control of the *Blazing Seven* and, thus, failed to state a right to contest the validity of the sequestration. There is a fundamental flaw in Superior's reasoning: Superior itself cited M&T as the sole defendant in its petition for writ of sequestration. At the time it undertook to have the *Blazing Seven* sequestered, Superior obviously felt that M&T had some basis to contest it or M&T would not have been named the sole defendant.

Lastly, Superior excepts because the sequestration has been dissolved. Thus, according to Superior, there is no real controversy before the court. The claim by Superior is that the dissolution of the sequestration has been rendered moot. M&T counters that it was required to post security of over $75,000.00, and that money is still tied up awaiting the resolution of Superior's action. An issue is moot when a judgment or decree on the issue has been deprived of any practical significance, been made purely abstract or academic, or "can serve no useful purpose and give no practical relief or effect." *Cat's Meow, Inc. v. City of New Orleans through*

8

*Dep't. of Fin.*, 98-0601, p. 8 (La. 10/20/98), 720 So.2d 1186, 1193. In the present matter, there is true practical significance to whether M&T should be required to maintain the bond that secured the dissolution; accordingly, the matter is not moot.

*Sequestration of the* Blazing Seven

The sequestration of the *Blazing Seven* was invoked by Superior based upon its claim to a privilege on the vessel under La.Civ.Code art. 3237, which establishes and ranks privileges on the price of ships and other vessels for such things as legal charges incurred to obtain the sale of the vessel, debts for pilotage, wharfage, towage, maintenance, repairs, wages of the crew, and the like. The term of the privilege created by Article 3237 is six months.

A separate statute establishing a general privilege over movables must also be considered. Louisiana Revised Statute 9:4502 creates a privilege over movables, including marine vessels, in favor of one engaged in the making or repair of marine vessels. However, if the vessel is removed from the place of business where the work was done, the privilege only lasts 120 days. La.R.S. 9:4502(A)(1). Because of the timing of the work and the filing of the petition for writ of sequestration, M&T argues that this privilege no longer attached.

The work was commenced by Superior on August 30 and ended on October 6, 2010. The petition for writ of sequestration was filed on February 18, 2011. Accordingly, Superior's privilege under La.R.S. 9:4502 lapsed on February 4, 2011, assuming arguendo it even attached to the *Blazing Seven*.

However, any privilege it may have enjoyed under La.Civ.Code art. 3237 would still have attached. The question regarding that privilege is whether it properly attached to the *Blazing Seven*, which was not the vessel on which the work was performed. The Civil Code provides us guidance.

9

Privileges are classified as either general, meaning they attach to all movables in general, or special, meaning they only attach to certain movables. La.Civ.Code arts. 3190, 3191. Louisiana Civil Code art. 3191 governs the general privileges on all movables, which are paid in the following order:

1. Funeral charges.

2. Law charges.

3. Charges, of whatever nature, occasioned by the last sickness, concurrently among those to whom they are due.

4. The wages of servants for the year past, and so much as is due for the current year.

5. Supplies of provisions made to the debtor or his family, during the last six months, by retail dealers, such as bakers, butchers, grocers; and, during the last year, by keepers of boarding houses and taverns.

6. The salaries of clerks, secretaries, and other persons of that kind.

Louisiana Civil Code art. 3217(2) affords a special privilege in favor of "a workman or artisan for the price of his labor, on the movable he has repaired or made, if the thing continues still in his possession." Article 3239 provides, "Creditors having privileges on ships or other vessels, may pursue the vessel in the possession of any person who has obtained it by virtue of a sale; in this case, however, a distinction must be made between a forced and a voluntary sale." Further, La.Civ.Code art. 3237(8), on which Superior relies, establishes a privilege on the price of ships for (emphasis added):

> Sums due to sellers, to those who have furnished materials and to workmen employed in the construction, if *the* vessel has never made a voyage; and those due to creditors for supplies, labor, repairing, victuals, armament and equipment, previous to the departure of *the* ship, if she has already made a voyage.

The employment of the definite article "the" implies that the privilege was intended to attach to the vessel on which materials were supplied or on which work was performed. The privilege was intended to be special and not general.

The trial court, at the February 23 hearing on M&T's motion to dissolve the sequestration, quite correctly found that Superior did not have a privilege over the *Blazing Seven*, but did enjoy a materialmen's lien over the A-frame and boom. But a materialmen's lien is established by La.R.S. 9:4502, which, as we have already discussed, had expired by the time the *Blazing Seven* was sequestered.

We conclude, therefore, that the trial court erred in not dissolving the sequestration.

*Superior's Motion for Summary Judgment*

An appellate court reviews a grant of summary judgment de novo, applying the same standards as would a trial court. *Schroeder v. Bd. of Sup'rs. of La. State Univ.*, 591 So.2d 342 (La.1991). Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Article 966 provides that while the burden of proving entitlement to summary judgment rests with the mover, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential facts of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So.2d 606.

Superior submitted affidavits in support, as we have already noted. It maintains that these affidavits are sufficient to satisfy the essential elements in a

11

suit on open account. The plaintiff must prove the existence of an enforceable contract for the extension of credit. *Bieber-Guillory v. Aswell*, 98-559 (La.App. 3 Cir. 12/30/98), 723 So.2d 1145. In *Broussard v. Guilbeaux*, 93-1353 (La.App. 3 Cir. 5/4/94), 640 So.2d 509, we stated that, in order to prove the existence of an open account, a plaintiff must show that the record of the account was kept in the course of business and it must corroborate the account's accuracy with supporting testimony. Thereafter, La.R.S. 9:2781 shifts the burden to the defendant to prove that the account is inaccurate or that he is entitled to credit. *Id.*

Superior annexed the affidavits of Toby Philip Morvant, James Paul Autin, and Scott Michael Duet. Morvant attested that he prepared the attached invoices, which were prepared from daily summaries (also attached) that were kept in the normal course of Superior's business. Autin testified that he was the supervisor in charge of the work performed on the *Brody Paul*, that all of the work reflected in the invoices was performed at the request of Tunstall, and that he prepared the daily summaries from which Morvant prepared the invoices. Duet testified that the work on the *Brody Paul* reflected in the invoices was performed in accordance with the written contract executed by Guilbeau and that neither Guilbeau nor Tunstall had ever disputed the amount of the invoiced work until January 30, 2011. These affidavits set forth the necessary elements of proof of an open-account claim.

M&T sought to introduce the statement, entitled an affidavit, of Tunstall. That statement was stricken by the trial court. Counsel for M&T then requested that he be given a continuance of the hearing in order to obtain the sworn affidavit of Tunstall, who was at sea at the time and had no access to a notary public. That motion was denied. We generally review a refusal to grant a continuance to

12

determine whether the trial court abused its discretion. *Moreno Props. Two, L.L.C. v. Acadiana Inv. Group. L.L.C.*, 09-634 (La.App. 3 Cir. 12/9/09), 25 So.3d 232.

In *Trahan v. State through Department of Health and Hospitals*, 95-320 (La.App. 3 Cir. 10/4/95), 663 So.2d 242, we determined that the trial court did not abuse its discretion in refusing to continue the hearing on a motion for summary judgment until discovery was complete. We arrived at this conclusion by analyzing the situation through the prism of La.Code Civ.P. articles 1601 and 1603, which govern trial continuances. Because of the length of time that passed between the filing of suit and the motion for summary judgment and the fact that plaintiffs had not propounded written discovery until five days before the hearing on the motion, we held that the trial court did not abuse its discretion in denying the continuance.

Louisiana Code of Civil Procedure Article 1602 governs peremptory grounds for granting a continuance. If the party applying for a continuance "has been unable, with the exercise of due diligence, to obtain evidence material to his case," or if "a material witness has absented himself without the contrivance of the party," the court has no discretion and must grant the continuance. Here, the situation is complicated by virtue of the fact that the unavailable witness is a party. Tunstall had, according to M&T's counsel, been at sea since April 1, 2011. The motion for summary judgment was filed on March 24, 2011, and the order fixing it for hearing on April 25, 2011, was signed that same day.

We consider a number of factors relevant to our decision. The litigation was initiated slightly over two months before the motion for summary judgment was filed, and Superior's amended pleading alleging M&T's liability on open account was filed just three weeks before the motion. The matter was set for hearing once and had not previously been continued for any reason. The motion to strike the

13

statement of Tunstall was filed on April 21, 2011, the Thursday before the Monday, April 25, hearing on Superior's motion for summary judgment. Under these circumstances, without regard to whether the continuance was mandated under the peremptory grounds set forth in La.Code Civ.P. art. 1602 or discretionary under art. 1601, we find the trial court erred in not allowing M&T the continuance.

Because we find the trial court should have allowed M&T the opportunity to obtain the notarized affidavit of Tunstall, we need not consider M&T's remaining assignments of error, as they are moot.

## CONCLUSION

The privilege established in Superior's favor for the work it performed on the *Brody Paul* did not extend to the *Blazing Seven*. Because Superior waited more than 120 days before seeking sequestration, its privilege over the A-frame and boom had expired. The trial court erred in failing to dissolve the sequestration of the *Blazing Seven*. M&T was prevented from obtaining the sworn affidavit of Tunstall, who was at sea and unable to appear before a notary public. Given the brief duration of the litigation in this matter, the trial court erred in not continuing the hearing on Superior's motion for summary judgment.

The judgment in favor of Superior is reversed. All costs of this appeal are taxed to plaintiff/appellee, Superior Shipyard and Fabrication, Inc.

**REVERSED AND REMANDED.**